**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 29 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**Michael Rodriquez Marshall,**
Plaintiff,

v.

**1:25-CV- 4901**

**Officer Alexander Sydney Jaeger** (Badge #B2517), individually and in his official capacity;
**Officer Nicholas Raven Abram** (Badge #B2416), individually and in his official capacity;
**Sergeant Tyler C. Stevers** (Badge #B1570), individually and in his official capacity;
**Gwinnett County Police Department**;
**Gwinnett County Government**,
Defendants.

Civil Action No.: _____

---

**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**
**(42 U.S.C. § 1983 – Civil Rights Action)**

---

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4), and 1367, and 42 U.S.C. §§ 1983 and 1988.
2. Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred in Gwinnett County, Georgia, within the Northern District of Georgia.

---

## II. PARTIES

3. Plaintiff **Michael Rodriquez Marshall** is a natural person and citizen of the United States and Georgia, residing in Gwinnett County. He brings this action pro se.
4. Defendant **Officer Alexander Sydney Jaeger** (Badge #B2517) is a sworn officer of the Gwinnett County Police Department.
5. Defendant **Officer Nicholas Raven Abram** (Badge #B2416) is a sworn officer of the Gwinnett County Police Department.

6. Defendant **Sergeant Tyler C. Stevers** (Badge #B1570) is a sworn officer of the Gwinnett County Police Department.
7. Defendant **Gwinnett County Police Department** is the law enforcement agency of Gwinnett County.
8. Defendant **Gwinnett County Government** is the municipal governing body with authority over the police department and its officers.

---

## III. FACTUAL ALLEGATIONS

### A. The Incident

9. On **November 6, 2023**, Plaintiff was operating his private automobile when Defendant Jaeger, traveling in the opposite direction, made a U-turn to follow Plaintiff without observing any violation (**Exhibit I – Scene Diagram & Street Photos**).
10. Officer Jaeger initiated a stop solely based on a license plate scan, claiming the registered owner had no valid license, without observing any traffic infraction (**Exhibit B – Incident & Arrest Reports**).
11. Plaintiff informed Jaeger he was not engaged in commercial activity, had committed no crime, and requested probable cause or a warrant before providing ID.
12. Jaeger claimed to see a Margarita can in the back seat and again demanded Plaintiff exit. Plaintiff refused without a warrant, asserting rights, and presented an "Inquiry of Detainment" document.
13. Jaeger threatened to break the windows. Plaintiff exited under duress.
14. Jaeger unlawfully entered Plaintiff's vehicle, seized his phone, and taunted Plaintiff about accessing and deleting video evidence (**Exhibit G – Open Records Denial of Bodycam Footage**).
15. Jaeger and Abram arrested Plaintiff without a warrant or probable cause (**Exhibit C – Oaths of Office; Exhibit A – Open Records Response – No Bonds**).
16. Plaintiff was transported in the opposite direction of the jail at high speed, causing fear for his life.
17. No field sobriety tests or DUI investigation occurred. Plaintiff was cited for "driving without a license," "open container," and later charged with "obstruction" (Warrant #23W-19487).
18. Nearly two years later, Plaintiff has not been arraigned, violating his Sixth Amendment rights.

### B. Pattern of Misconduct & Policy Violations

19. Defendants have repeated misconduct histories (**Exhibit H – Officer Misconduct & Use-of-Force Patterns**).
20. Open Records confirmed **no lawful bonds** exist for the Defendant officers, in violation of O.C.G.A. § 45-4-1 (**Exhibit A**).
21. Gwinnett County Police Department policies violated include:

- **G.O. 201 – Ethics and Professional Conduct** (pp. 53–55)
- **G.O. 307 – Arrests and Detention**
- **G.O. 403 – Use of Force** (pp. 248–250)
- **G.O. 613 – Body-Worn Cameras** (pp. 596–end)
  **(Exhibit E – Policy Violations Summary)**.

22. Defendants also demanded $400 for access to the General Orders Manual, obstructing transparency **(Exhibit D – Open Records Request & Denial)**.
23. Plaintiff's **Declaration of Events & Timeline** details all relevant actions and rights violations **(Exhibit J)**.
24. Plaintiff served **Notice of Intent to Sue** to all parties on July 17, 2025 **(Exhibit F)**.

---

## IV. CAUSES OF ACTION

**Count I – Fourth Amendment – Unlawful Seizure and Arrest (42 U.S.C. § 1983)** – Supported by Exhibits A, B, C, E, I, J.
**Count II – Fourth Amendment – Unlawful Search (42 U.S.C. § 1983)** – Supported by Exhibits B, G, I, J.
**Count III – Fifth & Fourteenth Amendments – Due Process Violations (42 U.S.C. § 1983)** – Supported by Exhibits B, C, E, J.
**Count IV – Sixth Amendment – Denial of Speedy Trial (42 U.S.C. § 1983)** – Supported by Exhibit J.
**Count V – Monell Liability – Failure to Train/Supervise (42 U.S.C. § 1983)** – Supported by Exhibits A, C, E, H.
**Count VI – Ultra Vires Acts (O.C.G.A. § 45-4-1; § 1983)** – Supported by Exhibits A, C, E.
**Count VII – Intentional Infliction of Emotional Distress (State Law)** – Supported by Exhibits I, J.

---

## V. RELIEF REQUESTED

Plaintiff requests:
A. $500,000 compensatory damages;
B. $1,500,000 punitive damages against individual Defendants;
C. Declaratory judgment;
D. Injunctive relief compelling production of all bodycam footage;
E. Court costs and other relief.

---

## VI. EXHIBIT LIST

- **Exhibit A** – Open Records Response: No Bonds Exist (O.C.G.A. § 45-4-1 violation)

- **Exhibit B** – Incident & Arrest Reports
- **Exhibit C** – Oaths of Office for Jaeger, Abram, Stevers
- **Exhibit D** – Open Records Request & $400 Denial for General Orders Manual
- **Exhibit E** – Policy Violations Summary (G.O. 201, 307, 403, 613)
- **Exhibit F** – Notice of Intent to Sue (July 17, 2025)
- **Exhibit G** – Open Records Denial of Bodycam Footage
- **Exhibit H** – Officer Misconduct & Use-of-Force Patterns
- **Exhibit I** – Scene Diagram & Street Photos
- **Exhibit J** – Plaintiff's Declaration of Events & Timeline

---

**Respectfully submitted,**

Date: _____

/s/ Michael Rodriquez Marshall

349 Clearsprings Dr.                    By: Mich l. Mchl

Lawrenceville, GA 30046

(470) 277-3046

Exhibit    A

## [Records Center] Public Records Request :: R215423-032525

From:   Gwinnett County Open Records (gwinnettcountyga@govqa.us)

To:     marshallmichael80@yahoo.com

Date:   Thursday, March 27, 2025 at 08:13 AM EDT

— Please respond above this line —

 **Gwinnett**

GWINNETT COUNTY
OPEN RECORDS OFFICE
75 Langley Drive | Lawrenceville, GA 30046-6935
(O) 770.822.8700 | (F) 770.822.8790
www.gwinnettcounty.com

RE: OPEN RECORDS REQUEST of March 25, 2025., Reference # R215423-032525.

Dear Michael Marshall,

Gwinnett County received an open records request from you on March 25, 2025. Your request mentioned:

**"** See attached request**
**Requesting all Affivadits in case**
**Field Report**
**Oath of office on all officers involved**
**Bonds on all involved officers**
**All involved officers names and badge numbers**
**Police report"**

Gwinnett County has reviewed its files and has located responsive records to your request. Portions of the records requested are exempt from disclosure under the Georgia Open Records Act and have been **redacted** for the following reasons:

<u>O.C.G.A. § 50-18-72(a)(20)-</u>Records that reveal an individual's personal information that is exempt from disclosure.

**This is for the Date of Birth for both the initial report and the arrest report.**

Also for the **Field Report** and **Bonds on Officers** Gwinnett County has reviewed its files and has determined there are no responsive documents to your request.

For the 3 officers that were involved in your case their names and badge numbers are:

**Officer A. Jaeger B2517**

**Officer N. Abram B2416**

and

**Sgt. T. Stevers B1570**

I have also attached all 3 of their Oath of Office papers.

Please log in to the Open Records Center at the following link to retrieve the appropriate responsive documents.

Gwinnett County Public Records Center Public Records Request – R215423-032525

- Click on **My Request Center**
- Click on **View My Requests -** Choose the request you want to view.
- Click on **View Files**

    - Your request will open, and any files/attachments associated with the request. Click on the title of the document you wish to download from the **"Files"** box.
    - **Note:** If you are using Chrome as your browser, the documents will download at the bottom of the screen. You will need to click on the document(s) at the bottom of the screen once it downloads to open/view the file. If the files do not appear to be downloading, please check your firewall and pop-up blocker settings.

If you have any questions or need additional information, please feel free to contact my office at 770.513.5244.

Sincerely,

Nicole Duffield
Customer Service Asc III
Police

To monitor the progress or update this request please log into the Open Records Center



Exhibit B

 **Gwinnett**

## Arrest Information

| Arrest Date/Time 11/07/2023 00:42:00 | Arrest Type ON-VIEW ARREST (APPREHENSION WITHOUT A WARRANT OR PREVIOUS INCIDENT REPORT) | | | | | |
|---|---|---|---|---|---|---|

**Arrest Disposition**
CLEARED BY ARREST

**Address**
1595 OLD NORCROSS RD NW | **Apartment** | **Building**

| City LAWRENCEVILLE | State GA | Zip 30046 | | | |
|---|---|---|---|---|---|

| Juvenile NO | Disposition Under 17 | | Multiple Arrest Segments NOT APPLICABLE | |
|---|---|---|---|---|

| Arresting Agency Name GWINNETT COUNTY POLICE DEPARTMENT | Arresting Agency Jurisdiction GA0670200 | Holding Officer or Facility GWINNETT COUNTY DETENTION CENTER |
|---|---|---|

### Booking

| Previously Arrested in Gwinnett YES | Homeless NO | Known Physical/Mental Problem NO |
|---|---|---|

**Gang Affiliation**

| Keep Separated From | Booking Date/Time 11/07/2023 00:35:00 |
|---|---|

## Charge 1

| GA Statute 40-5-20 | Statute Description DRIVERS MUST BE LICENSED; PRIOR LICENSES SURRENDERED; LOCAL LICENSES FORBIDDEN [99] | |
|---|---|---|

| Felony/Misdemeanor MISDEMEANOR | | Degree |
|---|---|---|

| Counts 1 | Warrant / Citation Number PE00284776 | Gang Related NO |
|---|---|---|

## Charge 2

| GA Statute 40-6-253 | Statute Description POSSESSION OF OPEN ALCOHOL CONTAINER [99] [MIS] | |
|---|---|---|

| Felony/Misdemeanor MISDEMEANOR | | Degree |
|---|---|---|

| Counts 1 | Warrant / Citation Number PE00284777 | Gang Related NO |
|---|---|---|

## Charge 3

| GA Statute 16-10-24(A) | Statute Description WILLFUL OBSTRUCTION OF LAW ENFORCEMENT OFFICERS [90Z] [MIS] | |
|---|---|---|

| Felony/Misdemeanor MISDEMEANOR | | Degree |
|---|---|---|

| Counts 1 | Warrant / Citation Number 23W-19487 | Gang Related NO |
|---|---|---|

## Arrestee

| Name (Last, First Middle Suffix) MARSHALL, MICHAEL R | | Moniker | Race BLACK OR AFRICAN AMERICAN | Ethnicity NON-HISPANIC | Sex MALE |
|---|---|---|---|---|---|

| Date of Birth 1980 | Age 43 | Height 6'05" | Weight 165 | Hair Color BLACK | Eye Color BROWN |
|---|---|---|---|---|---|

| Social Security # | Resident Status<br>RESIDENT | | Place of Birth (City & State)<br>UNKNOWN | | | Country of Birth<br>UNKNOWN | | |
|---|---|---|---|---|---|---|---|---|
| License Number<br>055099279 | | | | | State<br>GA | | | |
| Address<br>349 CLEARSPRINGS DR SE | | | | | | | Apartment | |
| City<br>LAWRENCEVILLE | State<br>GA | Zip<br>30046 | | | | | | |

**Arrestee Scars Marks Tattoos**

| SMT | | | NCIC Code | Description | | Location |
|---|---|---|---|---|---|---|
| | | | | | | |

**Clothing Information**

| Home Phone | | Cell Phone | | Email | |
|---|---|---|---|---|---|

| Misc ID Type | Misc ID State | Misc ID Number | |
|---|---|---|---|

| Arrestee Armed With<br>UNARMED | | | Weapon Make/Model | | Automatic |
|---|---|---|---|---|---|

| Immigration Status | | Verified Immigration Status | |
|---|---|---|---|

Arrestee (sidebar label)

## Narrative 1

ARRESTEE WAS ARRESTED WITHOUT INCIDENT, HANDCUFFED (DOUBLE-LOCKED, CHECKED FOR FIT), PLACED IN MY PATROL CAR AND TRANSPORTED TO THE GWINNETT COUNTY DETENTION CENTER. ARRESTEE WAS RELEASED TO THE DEPUTIES ON DUTY.

## Officer 1

| Involvment Type<br>REPORTING | Officer Name<br>JAEGER B2517 | Date<br>11/07/2023 | Shift<br>D | Section<br>CENTRAL |
|---|---|---|---|---|

## Officer 2

| Involvment Type<br>APPROVING | Officer Name<br>STEVERS B1570 | Date<br>11/07/2023 | Shift<br>D | Section<br>CENTRAL |
|---|---|---|---|---|

## Transporting Officer 1

| Involvment Type<br>TRANSPORTING | Officer Name<br>JAEGER B2517 | | Date<br>11/07/2023 00:41:00 |
|---|---|---|---|



## Premise

| Reported Date | | Incident Start Date | | | Incident End Date | | | Family Violence | |
|---|---|---|---|---|---|---|---|---|---|
| 11/06/2023 23:51:00 | | 11/06/2023 23:51:00 | | | 11/07/2023 01:22:00 | | | NO | |

**Commonplace Name**

| Incident Address | | | | Cross Street | | | | Apartment | Building |
|---|---|---|---|---|---|---|---|---|---|
| 1595 OLD NORCROSS RD NW | | | | | | | | | |

| City | County | | State | Zip | Precinct | | Zone | | |
|---|---|---|---|---|---|---|---|---|---|
| LAWRENCEVILLE | GWINNETT | | GA | 30046 | CENTRAL | | 531 | | |

### Administrative Section

| Gun Involved | | | Juvenile(s) Involved | | Gang Related | | Use of Force | | First Aid Administered |
|---|---|---|---|---|---|---|---|---|---|
| NO - GUN NOT INVOLVED | | NO | | | NO | | NO | | NONE |

| Overdose | Overdose Death | | Possible Mental Health Issue | | Human Trafficking | | Surveillance System | | |
|---|---|---|---|---|---|---|---|---|---|
| NO | | | NO | | NO | | NONE | | |

| Premise Vacant | | Premise Under Construction | | Victim will Prosecute | | Case Status | | | |
|---|---|---|---|---|---|---|---|---|---|
| NO | | NO | | YES | | ACTIVE | | | |

| Exceptional Clearance | | | | | | | | | Clearance Date |
|---|---|---|---|---|---|---|---|---|---|
| NOT APPLICABLE (NOT CLEARED EXCEPTIONALLY) | | | | | | | | | |

| Solvability | | | | | | Uniform Follow-up | Photos Taken | | CSI Called |
|---|---|---|---|---|---|---|---|---|---|
| KNOWN SUSPECTS | | | | | | NO | NO | | NO |

| CID Called | Forward to CID | | Impound | | Written Statement(s) | Related to a Gwinnett County Loss Notice | | Which Loss Type | |
|---|---|---|---|---|---|---|---|---|---|
| NO | NO | | NO | NO | NO | | | | |

## Offense 1

| GA Statute | Statute Description | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 40-5-20 | DRIVERS MUST BE LICENSED; PRIOR LICENSES SURRENDERED; LOCAL LICENSES FORBIDDEN [99] | | | | | | | | |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | | Location Type | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | | | | | | |

| Bias Motivation | | | | | | | Offender Suspected of Using | | Cargo Theft |
|---|---|---|---|---|---|---|---|---|---|
| NONE | | | | | | | ALCOHOL | | |

**Criminal Activity/Gang Info**

**Weapon Types**

| Weapon Automatic 1 | | Weapon Automatic 2 | | No. Premises Entered | | Method of Entry | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

### Bias Motivation

| Whether There is Evidence to Indicate That the Incident Occurred Because of a Persons Actual or Perceived Attributes | Existance of Any Objects or Symbols Associated with the Terrorizing of Persons Based Upon Actual or Perceived Race, Religion, or Sex | Number of Weapons Involved | Type of Police Action Taken in Disposition of Case |
|---|---|---|---|
| | | | |

## Offense 2

| GA Statute | Statute Description | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 40-6-253 | POSSESSION OF OPEN ALCOHOL CONTAINER [99] [MIS] | | | | | | | | |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | | Location Type | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | | | | | | |

| Bias Motivation | | | | | | | Offender Suspected of Using | | Cargo Theft |
|---|---|---|---|---|---|---|---|---|---|
| NONE | | | | | | | ALCOHOL | | |

**Criminal Activity/Gang Info**

**Weapon Types**

| Weapon Automatic 1 | Weapon Automatic 2 | No. Premises Entered | Method of Entry |
|---|---|---|---|

**Offense 2**

**Bias Motivation**

| Whether There is Evidence to Indicate That the Incident Occurred Because of a Persons Actual or Perceived Attributes | Existance of Any Objects or Symbols Associated with the Terrorizing of Persons Based Upon Actual or Perceived Race, Religion, or Sex | Number of Weapons Involved | Type of Police Action Taken in Disposition of Case |
|---|---|---|---|

## Offense 3

| GA Statute | Statute Description | | | |
|---|---|---|---|---|
| 16-10-24(A) | WILLFUL OBSTRUCTION OF LAW ENFORCEMENT OFFICERS [90Z] [MIS] | | | |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | Location Type |
|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | |

| Bias Motivation | | | Offender Suspected of Using | Cargo Theft |
|---|---|---|---|---|
| NONE | | | ALCOHOL | |

**Criminal Activity/Gang Info**

**Weapon Types**

| Weapon Automatic 1 | Weapon Automatic 2 | No. Premises Entered | Method of Entry |
|---|---|---|---|

**Bias Motivation**

| Whether There is Evidence to Indicate That the Incident Occurred Because of a Persons Actual or Perceived Attributes | Existance of Any Objects or Symbols Associated with the Terrorizing of Persons Based Upon Actual or Perceived Race, Religion, or Sex | Number of Weapons Involved | Type of Police Action Taken in Disposition of Case |
|---|---|---|---|

## Suspect 1

| Aggressor Relationship to Victim | Is the Suspect a Juvenile | Religion of Offender |
|---|---|---|

**Related Offense 1**
16-10-24(A) WILLFUL OBSTRUCTION OF LAW ENFORCEMENT OFFICERS [90Z] [MIS] (90Z M)

**Related Offense 2**
40-5-20 DRIVERS MUST BE LICENSED: PRIOR LICENSES SURRENDERED: LOCAL LICENSES FORBIDDEN [99] (99)

**Related Offense 3**
40-6-253 POSSESSION OF OPEN ALCOHOL CONTAINER [99] [MIS] (99 M)

| Name (Last, First, Middle, Suffix) | | | | | | Moniker | |
|---|---|---|---|---|---|---|---|
| MARSHALL, MICHAEL R | | | | | | | |

| Race | | Ethnicity | Sex | Date of Birth | Age | SSN | |
|---|---|---|---|---|---|---|---|
| BLACK OR AFRICAN AMERICAN | | NON-HISPANIC | MALE | Perso 1980 | 43 | | |

| License Number | License State | Hair Color | Eye Color | Weight | Height |
|---|---|---|---|---|---|
| 055099279 | GA | BLACK | BROWN | 165 | 6'05" |

| Build | Facial Hair | Teeth | Suspect Resident of Jurisdiction |
|---|---|---|---|
| LIGHT BUILD | FULL BEARD | NORMAL | RESIDENT |

### Suspect Scars Marks Tattoos

| SMT | NCIC Code | Description | Location |
|---|---|---|---|
| No Suspect SMT | | | |

| Home Phone | Cell Phone | Email |
|---|---|---|

| Misc. ID Type | Misc. ID State | Misc ID Number |
|---|---|---|

## Suspect 1

| Address | | | | | | | Apartment | | Building |
|---|---|---|---|---|---|---|---|---|---|
| 349 CLEARSPRINGS DR SE | | | | | | | | | |

| City | State | | Zip | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LAWRENCEVILLE | GA | | 30046 | | | | | | |

### Alias Information

| Suspect Alias | | | SSN | Date of Birth | Sex |
|---|---|---|---|---|---|
| No Known Alias | | | | | |

### Clothing Information

### Occupation Information

| Occpuation Code/Description | | Employer Name | | | | Phone | |
|---|---|---|---|---|---|---|---|

| Address | | | | | Suite | | Building |
|---|---|---|---|---|---|---|---|

| City | State | Zip | | | | | |
|---|---|---|---|---|---|---|---|

## Vehicle 1

**Vehicle Involvement**
SUSPECT

**Related To 1**
MARSHALL, MICHAEL R

| NIBRS Class | License Plate Number | License Plate State |
|---|---|---|
| AUTOMOBILES | RSJ8290 | GA |

| Status |
|---|
| NONE |

| Type | | | Year | Make | | Model | |
|---|---|---|---|---|---|---|---|
| 2 OR 4 DOOR SEDAN (PASSENGER) | | | 2016 | FORD | | FUSION | |

| VIN | | Color(s) | | | Value |
|---|---|---|---|---|---|
| 3FA6P0H75GR175805 | | SILVER | | | |

### Owner Information

| Name (Last, First Middle Suffix) | | | | Business Name | |
|---|---|---|---|---|---|
| MARSHALL, MICHAEL R | | | | | |

| Address | | | | | |
|---|---|---|---|---|---|
| 349 CLEARSPRINGS DR SE | | | | | |

| City | State | Zip | | Phone | |
|---|---|---|---|---|---|
| LAWRENCEVILLE | GA | | | | |

### Insurance Information

| Insured By | | Policy Number | | Phone | |
|---|---|---|---|---|---|
| TRUMBULL INS CO | | 54UE ZT8903 - 540002 | | | |

### Vehicle Recovery Information

| Recoverd Date | Recovered Location | | | | Recovered Value |
|---|---|---|---|---|---|

| Condition | Original Reporting Agency | | | Original Report Case | |
|---|---|---|---|---|---|

## Narrative 1

ON 11/06/2023 I WAS ON OLD NORCROSS RD DRIVING TOWARDS SUAGRLOAF PKWY WHEN I OBSERVED A SILVER FOR FOCUS WITH THE LICENSE PLATE OF RSJ8290 IN FRONT OF ME. I RAN THE LICENSE PLATE AND THE REGISTERED OWNER, MICHAEL MARSHALL RETURNED AS NOT BEING LICENSED.
I DROVE ALONG SIDE OF THE VEHICLE AND OBSERVED THAT A MALE THAT FIT THE DESCRIPTION OF THE REGISTERED OWNER WAS DRIVING THE VEHICLE.
I INITIATED A TRAFFIC STOP AT THE INTERSECTION OF OLD NORCROSS RD AND SUGARLOAF PKWY. THE VEHICLE CAME TO STOP IN THE PARKING LOT OF 1595 OLD NORCROSS RD.
I APPRAOCHED THE VEHICLE AND CONFIRMED THAT THE DRIVER WAS INFACT THAT REGISTERED OWNER.
I INITALLY OBSERVED THAT THE DRIVER HAD RED WATERY EYES AND SLURRED SPEECH. I BEGAN TO TALK WITH HIM AND ASKED HIM TO PROVIDE HIS DRIVERS LICENSE, HE REFUSED TO PROVIDE A DRIVERS LICENSE OR ANY FOR OF ID NUMEROUS TIMES.
I THEN ASKED HIM TO STEP OUT OF THE CAR. HE REFUSED. I GAVE NUMEROUS LAWFUL ORDERS FOR MR. MARSHAL TO STEP OUT OF THE CAR HE CONTINUALLY REFUSED. I ALSO OBSERVED WHAT APPEARED TO BE AN OPEN CONTAINER OF AN ALCOHOLIC BEVERAGE IN THE REAR POCKET BEHND THE PASSENGER SEAT. BASED ON HIS RED WATERY EYES, HIS SLURRED SPEECH, AND THE PRESENCE OF AN OPEN CONTAINER, I ALSO SUSPECTED HIM OF BEING UDNER THE INFLUENCE.
MR. MARSHALL REFUSED MY LAWFUL ORDERS UNTIL OFFICER ABRAMS ARRIVED ON SCENE, AT WHICH POINT WE WERE ABLE TO TALK HIM OUT OF THE CAR. I THEN DETAINED HIM IN HANDCUFFS, CHECKED FOR FIT AND COUBLE LOCKED.
I THEN PLACED HIM UNDER ARREST FOR DRIVING WITHOUT A LICENSE AND OBSTRUCTION. HE WAS SEARCHED INCIDENT TO ARREST. I THEN RETRIEVED THE OPEN CONTAINER, THERE WAS STILL A SMALL AMOUNT OF LIQUID INSIDE. I THEN CONDUCTED A SEARCH OF THE LUNGE AREA OF THE CAR TO LOOK FOR FURTHER EVIDENCE OF DUI OR POSESSION OF AN OPEN CONTAINER. I DID NOT FIND ANYTHING.
I THEN ASKED MR. MARSHALL IF HE WOULD CONSENT TO PERFORMING A FIELD SOBRIETY EVALUATION. HE DID NOT CONSENT. HE ALSO REPLIED WITH A NO TO GEORGIA IMPLIED CONSENT.
DUE TO THE FACT I WOULD NOT BE ABLE TO EVALUATE MR. MARSHALL ANY FURTHER, I DISCONTINUED MY INVESTIGATION OF A POTENTIAL DUI.
AT THAT POINT MR MARSHALL WAS TRANSPORTED TO THE GWINNETT COUNTY JAIL WHERE HE WAS HANDED OVER TO ON DUTY JAIL DEPUTIES WITHOUT INCIDENT.
AT THE JAIL HE WAS CITED FOR THE FOLLOWING

- DRIVING WIHOUT A LICENSE (PE002284776)
- POSESSION OF AN OPEN ALCOHOL CONTAINER (PE00284777)

I ALSO OBTAINED A WARRANT FOR MISDEMEANOR OBSTRUCTION DUE TO HIS NUMEROUS REFUSALS OF MY LAWFUL ORDERS (23W-19487) ALL OF THE ABOVE WERE SERVED AT THE JAIL.

### Officer 1

| Involvment Type<br>REPORTING | Officer Name<br>JAEGER B2517 | Date<br>11/07/2023 00:41:00 |
|---|---|---|
| Shift<br>D | Section<br>CENTRAL | |

### Officer 2

| Involvment Type<br>TRANSPORTING | Officer Name<br>JAEGER B2517 | Date<br>11/07/2023 00:41:00 |
|---|---|---|
| Shift<br>D | Section<br>CENTRAL | |

### Officer 3

| Involvment Type<br>APPROVING | Officer Name<br>STEVERS B1570 | Date<br>11/07/2023 18:14:13 |
|---|---|---|
| Shift<br>D | Section<br>CENTRAL | |

Exhibit C

# **LOYALTY OATH**

STATE OF GEORGIA

COUNTY OF GWINNETT

I, N. R. Abram, a citizen of the United States of America, and being an employee of the Gwinnett County Police Department, and the recipient of public funds for services rendered as such employee, do hereby solemnly swear and affirm that I will support the Constitution of the United States and the Constitution of Georgia.

SO HELP ME GOD!

Sworn to and subscribed before me,

_26th_ Day of ____July____ , _2022_____

_____ # 2416

Officer Signature

_Sandra Pak_

Judge Sandra Pak
Probate Court

---

### *DIRECTIONS*

*This oath, when taken, must be attached to the oath of office and filed therewith as required by law.*

*The Loyalty Oath, required by Code Sections 45-3-11 through 45-3-15, shall apply to all elected officers of this state, including the Governor, constitutional officers, elected officials of any political subdivision of the Government of Georgia, and local school board officials. O.C.G.A. 45-3-12.*

# **OFFICIAL OATH**

State of Georgia, Gwinnett County.

I, N. R. Abram, swear that I will duly and faithfully perform all the duties required of me as a peace officer of the County of Gwinnett, according to the best of my ability and understanding.
So, help me God.

I do further solemnly swear and affirm that I am not the holder of any unaccounted for public money due this State or any political subdivision or authority thereof; that I am not the holder of any office of trust under the government of the United States, any other state, or any foreign state which, by the laws of the State of Georgia I am prohibited from holding; that I am otherwise qualified to hold said office, according to the Constitution and Laws of Georgia, and that I will support the Constitution of the United States and of this State.

So, help me God!

<br>

_____ # 2416

Officer Signature

<br>

Sworn to and subscribed before me this

\_\_\_\_\_ 26th Day of \_\_July\_\_\_, 2022\_\_\_\_

<br>

Judge Sandra Pak

Probate Court

# **DEPARTMENTAL OATH**

I,    *N. R. Abram,* do solemnly swear and affirm that I shall faithfully perform all the duties required of me for the position to which I have been appointed or elected in the Government of Gwinnett County to the best of my ability. I shall uphold and defend the Constitution and Laws of the United States, the State of Georgia, and the Charter and Ordinances of Gwinnett County to the best of my ability. I shall abide by and be governed by the rules and regulations of the Gwinnett County Police Department and such other directives and procedures issued by persons having authority.

Sworn to and subscribed
before me this ___26th___ day
of ___July___ , ___2022___

_J.D. McClure 530_

**Signature & Title of Person**
**Authorized to Administer Oaths**
J.D. McClure
Chief of Police

___July 26, 2022___

**Date of Issuance**

_Nichele_ # 2416

Signature of Affiant

# **LOYALTY OATH**

STATE OF GEORGIA

COUNTY OF GWINNETT

I,  Alexander S. Jaeger, a citizen of the United States of America, and being an
employee of the Gwinnett County Police Department, and the recipient of public funds
for services rendered as such employee, do hereby solemnly swear and affirm that I will
support the Constitution of the United States and the Constitution of Georgia.

SO HELP ME GOD!

Sworn to and subscribed before me,

 24th   Day of ____**April**____ , **2023**

_____
Officer Signature

_____
Judge Christopher Ballar
Probate Court

---

### *DIRECTIONS*

*This oath, when taken, must be attached to the oath of office and filed therewith as
required by law.*

*The Loyalty Oath, required by Code Sections 45-3-11 through 45-3-15, shall apply to all
elected officers of this state, including the Governor, constitutional officers, elected
officials of any political subdivision of the Government of Georgia, and local school
board officials.  O.C.G.A. 45-3-12.*

# **OFFICIAL OATH**

State of Georgia, Gwinnett County.

I, <u>Alexander S. Jaeger</u>, swear that I will duly and faithfully perform all the duties required of me as a peace officer of the County of Gwinnett, according to the best of my ability and understanding.
So, help me God.

I do further solemnly swear and affirm that I am not the holder of any unaccounted for  public money due this State or any political subdivision or authority thereof; that I am not the holder of any office of trust under the government of the United States, any other state, or any foreign state which, by the laws of the State of Georgia I am prohibited from holding; that I am otherwise qualified to hold said office, according to the Constitution and Laws of Georgia, and that I will support the Constitution of the United States and of this State.

So, help me God!

_____
Officer Signature

Sworn to and subscribed before me this

_____24th_ Day of _April_____ , _2023___

_____
Judge Christopher Ballar

Probate Court

# **DEPARTMENTAL OATH**

I, Alexander S. Jaeger, do solemnly swear and affirm that I shall faithfully perform all the duties required of me for the position to which I have been appointed or elected in the Government of Gwinnett County to the best of my ability. I shall uphold and defend the Constitution and Laws of the United States, the State of Georgia, and the Charter and Ordinances of Gwinnett County to the best of my ability. I shall abide by and be governed by the rules and regulations of the Gwinnett County Police Department and such other directives and procedures issued by persons having authority.

Sworn to and subscribed
before me, this ___27th___ day
of ___April___ , ___2023___

___J.D. McClure 130___                              ___April 27 , 2023___

Signature & Title of Person                          Date of Issuance
Authorized to Administer Oaths
J.D. McClure
Chief of Police

___A. Jaeger 2517___

Signature of Affiant

# LOYALTY OATH

STATE OF GEORGIA

COUNTY OF GWINNETT

I, Tyler C. Stevers, a citizen of the United States of America, and being an employee of the Gwinnett County Police Department, and the recipient of public funds for services rendered as such employee, do hereby solemnly swear and affirm that I will support the Constitution of the United States and the Constitution of Georgia.

SO HELP ME GOD!

Sworn to and subscribed before me,

___10th___ Day of ___December___ , ___2012___

#1570

Officer Signature

Judge Walter J. Clarke, II
Probate Court

---

## DIRECTIONS

This oath, when taken, must be attached to the oath of office and filed therewith as required by law.

The Loyalty Oath, required by Code Sections 45-3-11 through 45-3-15, shall apply to all elected officers of this state, including the Governor, constitutional officers, elected officials of any political subdivision of the Government of Georgia, and local school board officials. O.C.G.A. 45-3-1

## OFFICIAL OATH

State of Georgia, Gwinnett County.

I, Tyler C. Stevers, swear that I will duly and faithfully perform all the duties required of me as a peace officer of the County of Gwinnett, according to the best of my ability and understanding.

So help me God.


I do further solemnly swear and affirm that I am not the holder of any unaccounted for public money due this State or any political subdivision or authority thereof; that I am not the holder of any office of trust under the government of the United States, any other state, or any foreign state which, by the laws of the State of Georgia I am prohibited from holding; that I am otherwise qualified to hold said office, according to the Constitution and Laws of Georgia, and that I will support the Constitution of the United States and of this State.

So help me God.

_#1570_

_____
Officer Signature

Sworn to and subscribed before me this
____10th____ Day of __December__ , _2012_____ .

_____
Walter J. Clarke, II
Probate Court Judge

## DEPARTMENTAL OATH

I, Tyler C. Stevers, do solemnly swear and affirm that I shall faithfully perform all the duties required of me for the position to which I have been appointed or elected in the Government of Gwinnett County to the best of my ability. I shall uphold and defend the Constitution and Laws of the United States, the State of Georgia, and the Charter and Ordinances of Gwinnett County to the best of my ability. I shall abide by and be governed by the rules and regulations of the Gwinnett County Police Department and such other directives and procedures issued by persons having authority.

Sworn to and subscribed
before me this ___13th___ day
of __December__, _2012_

Notary Public Jill P. Hart

Notary Public Walton County, GA

My Commission Expires June 29, 2016
My commission expires

Signature & Title of Person
Authorized to Administer Oaths
Charles M. Walters
Chief of Police

___December 13, 2012___
Date of Issuance

#1570
Signature of Affiant

GCPD Form #042 (Rev. 02-07-06)

## [Records Center] Public Records Request :: R232082-072125

From:  **Gwinnett County Open Records (gwinnettcountyga@govqa.us)**

To:  marshallmichael80@yahoo.com

Date:  **Thursday, July 24, 2025 at 04:42 PM EDT**

— Please respond above this line —

 **Gwinnett**

GWINNETT COUNTY
**OPEN RECORDS OFFICE**

75 Langley Drive | Lawrenceville, GA 30046-6935
(O) 770.822.8700 | (F) 770.822.8790
www.gwinnettcounty.com

Gwinnett County Police Open Records has reviewed its files and has located responsive records to your request.

The letter that explains the Open Records Indigent exemption and the Internal Affairs Reports for Officer N. Abram B2416, Officer Al Jaeger B2517, and Sergeant T. Stevers B1570 have been made available for your review as well as the GCPD General Directives Manual as it would take more than the longer than the first fifteen minutes for the open records staff to review and copy the request sections.  If you agree to the cost, the GDM will be reviewed and the requested specific sections will be pulled and made available.

Please log in to the Open Records Center at the following link to retrieve the appropriate responsive documents.

Gwinnett County Open Records Center - R232082-072125

- Click on **My Request Center**
- Click on **View My Requests -** Choose the request you want to view.
- Click on **View Files**
  - Your request will open, and any files/attachments associated with the request. Click on the title of the document you wish to download from the **"Files"** box.
  - Note: If you are using Chrome as your browser, the documents will download at the bottom of the screen. You will need to click on the document(s) at the bottom of the screen once it downloads to open/view the file. If the files do not appear to be downloading, please check your firewall and pop-up blocker settings.

As stated in the previous message.

Gwinnett County is authorized by law to charge reasonable search, retrieval, and copying costs to fulfill your request.  As provided by O.C.G.A. § 50-18-71(c)(1), you are notified that the estimated cost to search, retrieve, redact, copy and/or supervise inspection of the requested documents is $__368.96___ [over $25.00 but under $500.00].  This is calculated as follows:  a charge of $__23.06_____ per hour for ___16_hours after the first fifteen minutes

**Further pursuant to O.C.G.A. §50-18-71(d), Gwinnett County is also authorized to require your agreement to pay the above indicated charges prior to beginning production of documents**.  Once the County receives your

agreement to pay the charges indicated, production of your request will begin, and payment will be due after you receive the documents.  We estimate that the documents and final costs will be ready within ____7_____ business days from the date we receive your agreement to pay the estimated charges.

If we do not receive a response within 7 business days from 7/21/2025, this request will be closed.

If you have any questions, please contact my office at 770-513-5235.

Sincerely,

Cheryl Jackson
Customer Service Assoc. III, Police Open Records
Police

To monitor the progress or update this request please log into the Open Records Center

Powered by
GovQA

[Records Center] Public Records Request :: R232082-072125

From:  Gwinnett County Open Records (gwinnettcountyga@govqa.us)

To:    marshallmichael80@yahoo.com

Date:  Thursday, July 24, 2025 at 11:09 AM EDT

--- Please respond above this line ---

 **GWINNETT COUNTY**
**OPEN RECORDS OFFICE**
75 Langley Drive | Lawrenceville, GA 30046-6935
(0) 770.822.8700 | (F) 770.822.8750
www.gwinnettcounty.com

RE: OPEN RECORDS REQUEST of July 21, 2025, Reference # R232082-072125.

Dear Michael Marshall,

Gwinnett County received an open records request from you on July 21, 2025. Your request mentioned:

**"To: Gwinnett County Police Department**
**Open Records Unit**
**Subject: Request under Georgia Open Records Act (O.C.G.A. § 50-18-70)**
**Dear Records Custodian,**

**Pursuant to the Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq., I am requesting access to and copies of the following public records for use in an ongoing federal civil rights action under 42 U.S.C. § 1983 and related constitutional claims:**

**1. All written or electronic policies, procedures, and general orders related to:**
**- Investigatory stops and detentions (Terry stops)**
**- Warrantless arrests**
**- Field sobriety testing**
**- Consent and non-consent searches**
**- Use of force during traffic stops**
**- Body-worn camera protocols and retention/destruction of footage**

**2. All training manuals or materials provided to officers on:**
**- Constitutional rights of citizens**
**- Probable cause and reasonable suspicion**
**- Treatment of pro se individuals**
**- Arrest procedures without warrants**

**3. Records from internal affairs investigations or complaints against Officer Jaeger (Badge #B2517), Officer N. Abram (Badge #B2416), and Sgt. Stevers (Badge #B1570) from 2018 to present.**

**4. All disciplinary records, internal memos, or communications that reference citizen complaints or findings of misconduct relating to unlawful searches or false arrest.**

**5. Any incident report retention, redaction, or destruction policy used to justify the withholding of body camera footage on grounds of an open investigation under <u>O.C.G.A. § 50-18-72(a)(4)</u>.**

**This request is for non-commercial, legal purposes. Please notify me in advance of any estimated costs for duplication. I respectfully request a response within the three (3) business days required by law.**

**Sincerely,**
**Michael Marshall"**

Gwinnett County Police Open Records has reviewed its files and has located responsive records to your request.

<u>The letter that explains the Open Records Indigent exemption and the Internal Affairs Reports for Officer N. Abram B2416, Officer Al Jaeger B2517, and Sergeant T. Stevers B1570 have been made available for your review as well as the GCPD General Directives Manual as it would take more than the longer than the first fifteen minutes for the open records staff to review and copy the request sections. If you agree to the cost, the GDM will be reviewed and the requested specific sections will be pulled and made available.</u>

<u>Please log in to the Open Records Center at the following link to retrieve the appropriate responsive documents.</u>

Gwinnett County Open Records Center -- R232082-072125

- Click on **My Request Center**
- Click on **View My Requests -** Choose the request you want to view.
- Click on **View Files**

   - Your request will open, and any files/attachments associated with the request. Click on the title of the document you wish to download from the **"Files"** box.
   - <u>Note:</u> If you are using Chrome as your browser, the documents will download at the bottom of the screen. You will need to click on the document(s) at the bottom of the screen once it downloads to open/view the file. If the files do not appear to be downloading, please check your firewall and pop-up blocker settings.

<u>As stated in the previous message.</u>

<u>Gwinnett County is authorized by law to charge reasonable search, retrieval, and copying costs to fulfill your request.</u> As provided by <u>O.C.G.A. § 50-18-71(c)(1)</u>, you are notified that the estimated cost to search, retrieve, redact, copy and/or supervise inspection of the requested documents is $__368.96___ [over $25.00 but under $500.00]. This is calculated as follows: a charge of $__23.06_____ per hour for ___16_hours after the first fifteen minutes

<u>Further pursuant to O.C.G.A. §50-18-71(d), Gwinnett County is also authorized to require your agreement to pay the above indicated charges prior to beginning production of documents</u>. Once the County receives your agreement to pay the charges indicated, production of your request will begin, and payment will be due after you

receive the documents.  We estimate that the documents and final costs will be ready within ____7_____ business days from the date we receive your agreement to pay the estimated charges.

**If we do not receive a response within 7 business days from 7/21/2025, this request will be closed.**

If you have any questions, please contact my office at 770-513-5235.

Sincerely,

Cheryl Jackson
Customer Service Assoc. III, Police Open Records
Police

---

To monitor the progress or update this request please log into the Open Records Center

Powered by
**Gov**QA

# [Records Center] Public Records Request :: R232082-072125

From: **Gwinnett County Open Records (gwinnettcountyga@govqa.us)**

To: marshallmichael80@yahoo.com

Date: **Thursday, July 24, 2025 at 07:57 AM EDT**

**Attachments:**
INV25-R232082-1.pdf



RE: PUBLIC RECORDS REQUEST of July 21, 2025, Reference # R232082-072125

Dear Michael Marshall,

Gwinnett County received an open records request from you on July 21, 2025. Your request mentioned:

"To: Gwinnett County Police Department Open Records Unit Subject: Request under Georgia Open Records Act (O.C.G.A. § 50-18-70) Dear Records Custodian, Pursuant to the Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq., I am requesting access to and copies of the following public records for use in an ongoing federal civil rights action under 42 U.S.C. § 1983 and related constitutional claims: 1. All written or electronic policies, procedures, and general orders related to: - Investigatory stops and detentions (Terry stops) - Warrantless arrests - Field sobriety testing - Consent and non-consent searches - Use of force during traffic stops - Body-worn camera protocols and retention/destruction of footage 2. All training manuals or materials provided to officers on: - Constitutional rights of citizens - Probable cause and reasonable suspicion - Treatment of pro se individuals - Arrest procedures without warrants 3. Records from internal affairs investigations or complaints against Officer Jaeger (Badge #B2517), Officer N. Abram (Badge #B2416), and Sgt. Stevers (Badge #B1570) from 2018 to present. 4. All disciplinary records, internal memos, or communications that reference citizen complaints or findings of misconduct relating to unlawful searches or false arrest. 5. Any incident report retention, redaction, or destruction policy used to justify the withholding of body camera footage on grounds of an open investigation under O.C.G.A. § 50-18-72(a) (4). This request is for non-commercial, legal purposes. Please notify me in advance of any estimated costs for duplication. I respectfully request a response within the three (3) business days required by law. Sincerely, Michael Marshall"

Gwinnett County is providing you with an itemized estimate of the anticipated charges (please do not send payment to an estimate):

Fees Charged:
Labor Charged: $368.96

Estimated Total: $368.96

Pursuant to O.C.G.A. §50-18-71(d), **Gwinnett County is authorized to require your agreement to pay the above indicated charges prior to beginning production of documents.**

Once the County receives your agreement to pay the charges indicated, production of your request will begin, and payment will be due after you receive the documents. Please respond directly to this notification to approve the estimate.

If we do not receive a response within 7 business days, this request will be closed.

Sincerely,

Police Open Records
Police

To view the full details of this request please log into the Open Records Center.



## [Records Center] Public Records Request :: R232082-072125

From: Gwinnett County Open Records (gwinnettcountyga@govqa.us)

To: marshallmichael80@yahoo.com

Date: Monday, July 21, 2025 at 09:45 AM EDT

--- Please respond above this line ---



**GWINNETT COUNTY**
OPEN RECORDS OFFICE

75 Langley Drive | Lawrenceville, GA 30046-6935
(O) 770.822.8700 | (F) 770.822.8790
www.gwinnettcounty.com

RE: OPEN RECORDS REQUEST of July 21, 2025., Reference # R232082-072125.

Dear Michael Marshall,

Gwinnett County received an open records request from you on July 21, 2025. Your request mentioned:

**"To: Gwinnett County Police Department**
**Open Records Unit**
**Subject: Request under Georgia Open Records Act (O.C.G.A. § 50-18-70)**
**Dear Records Custodian,**

**Pursuant to the Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq., I am requesting access to and copies of the following public records for use in an ongoing federal civil rights action under 42 U.S.C. § 1983 and related constitutional claims:**

**1. All written or electronic policies, procedures, and general orders related to:**
**- Investigatory stops and detentions (Terry stops)**
**- Warrantless arrests**
**- Field sobriety testing**
**- Consent and non-consent searches**
**- Use of force during traffic stops**
**- Body-worn camera protocols and retention/destruction of footage**

**2. All training manuals or materials provided to officers on:**
**- Constitutional rights of citizens**
**- Probable cause and reasonable suspicion**
**- Treatment of pro se individuals**
**- Arrest procedures without warrants**

3. Records from internal affairs investigations or complaints against Officer Jaeger (Badge #B2517), Officer N. Abram (Badge #B2416), and Sgt. Stevers (Badge #B1570) from 2018 to present.

4. All disciplinary records, internal memos, or communications that reference citizen complaints or findings of misconduct relating to unlawful searches or false arrest.

5. Any incident report retention, redaction, or destruction policy used to justify the withholding of body camera footage on grounds of an open investigation under O.C.G.A. § 50-18-72(a)(4).

This request is for non-commercial, legal purposes. Please notify me in advance of any estimated costs for duplication. I respectfully request a response within the three (3) business days required by law.

Sincerely,
Michael Marshall"

Your request was addressed to the Gwinnett County Police Department, so we have forwarded your request to their department to search for the requested records.

If you have any questions, please contact our office at 770-619-6539. Thank you for your attention.

Sincerely,

Antonia Thomas

Gwinnett County Sheriff's Office

Records Management Unit

Open Records

---

To monitor the progress or update this request please log into the Open Records Center



Exhibit E

 Gwinnett

**GWINNETT COUNTY
POLICE DEPARTMENT**

| TYPE OF COMMUNICATION | | DISSEMINATION | | DESTINATION | | NUMBER | | PAGE | OF |
|---|---|---|---|---|---|---|---|---|---|
| General Orders | | Department | | Directives Manual | | 201.00 | | 1 | 3 |
| TOPIC: | Command | EFFECTIVE DATE | | SOURCE | | APPROVED BY | ☐ NEW | | |
| | Responsibility | 04/15/90 | | DLB/AAA | | JDM | ☐ AMENDS ☐ RESCINDS | 05/26/23 | |

### 201.01  SPAN OF SUPERVISORY CONTROL

Each employee is responsible or accountable to his/her immediate supervisor except when he/she has been detached for duty with another component of the Department. In this case, he/she is responsible to the commander or supervisor in control of that component or event.

Each organizational component of the Department will be under the command of only one (1) supervisor.

The number of employees under the immediate control of a supervisor shall not be excessive and will generally not exceed eight (8). The exact number of employees under the control of a supervisor will be dependent on the nature of the job being performed, the complexity of the task, the size of the area to be supervised, the experience level of the employees, and other factors having a bearing on the work environment.

### 201.02  SUPERVISORY ACCOUNTABILITY

Supervisory personnel are accountable for the activities of employees under their immediate supervision. This applies to all levels of supervision within the agency.

### 201.03  OBEDIENCE TO ORDERS

All employees of this Department shall willingly carry out all lawful orders and instructions of their supervisors as quickly as possible; including orders relayed from a supervisor by an employee of the same or lesser rank. Should any order or instruction conflict with any previous order or instruction given by another supervisor, or with this manual, or any procedures manual the employee shall respectfully call attention to the conflict of orders. If the supervisor giving the conflicting order does not change it to alleviate the conflict, his/her order shall stand and the responsibility for the execution shall be his/hers.

### 201.04  UNLAWFUL ORDERS

A supervisor shall not issue any order knowingly that is in violation of any state law, ordinance, or Department rule. No employee is required to obey an unlawful order. The responsibility to refuse to obey an unlawful order rests with the individual employee and will require sufficient justification of his/her actions. Employees shall immediately report any unlawful order in writing to the next higher authority through the appropriate chain of command.

### 201.05  STAFF MEETINGS

The Chief of Police will conduct meetings with the Bureau Commanders, Division Commanders and other staff as deemed necessary.

Bureau Commanders and Division Commanders will conduct meetings with their assigned supervisors as needed.

Operational and personnel matters will be discussed with each participant having the opportunity to provide input. Information exchanged during these meetings should be disseminated to the lowest levels of employees if not of a non-confidential nature.

### 201.06  AUTHORITY AT INCIDENT SCENES

A.  Multiple Responses

On occasion, various Departments will be required to respond simultaneously to the scenes of accidents, crimes, or other emergencies in which overall coordination of activities is essential.

To avoid conflicting orders at the scene, the senior ranking officer of the Department most affected by the incident will assume control of all operational units of the various departments for purposes of coordination and be the overall Incident Commander.

In general, the Police Department's senior officer will be responsible for traffic accident and crime scenes. The Fire Department's senior ranking officer will be responsible for fires, hazardous materials, and explosive hazards (other than bomb threats or explosive devices that have been located).

All Department personnel will follow the orders of the Incident Commander, consistent with their own internal policies and procedures, to the fullest extent possible.

B.  Crime or Accident Scenes

In instances of a routine or operational matter, the person in command shall be the commander, supervisor or responding officer whose section or unit is most responsible for the event.

The Uniform Division is generally responsible for handling traffic control and problems, accident scenes, evidence protection, crime scene protection, prisoner security at major crime scenes until properly relieved by Criminal Investigation Division personnel, and investigation of crimes at the precinct level.

The Criminal Investigation Division is generally responsible for the investigation of major or complex crimes. In instances where it is deemed necessary to call for immediate follow-up by an investigator, the assigned investigator will be given sufficient control of the investigation to complete it successfully.

If a person of higher rank from another section elects to assume command of a traffic crime or operational matter outside his/her normal scope of command, he/she shall be held responsible for the successful completion of the event.

## 201.07  SUPERVISORY RESPONSE TO INCIDENTS/ACCIDENTS

There are a variety of situations where supervisory personnel need to respond to incidents. Supervisors are responsible for responding to incidents of a serious nature to assume command, direct operations, and/or ensure that Departmental procedures are followed. Situations that require a supervisor to respond include:

A.  Employee injury/death.

B.  Any death of a violent or suspicious nature.

C.  Any in-progress crime of a violent or serious nature.

D.  Any traffic accident involving serious injury, death, or major disruption of traffic flow.

E.  Use of lethal force by an employee against another person.

F.  Use of less than lethal force involving the use of an electronic control weapon (ECW).

G.  Missing persons where the age or mental capacity of the person is a concern.

H.  Dispatch of any domestic animal with a county owned firearm or departmental authorized primary or second weapon.

Supervisors should also respond to any incident/accident that has the obvious potential for violence or confrontation; such as, domestic calls where a person is armed or a civil disturbance.

## 201.08  RESPONSIBILITY FOR COMMAND OF CRITICAL INCIDENTS

A.  Purpose

Police officers are accustomed to handling a variety of incidents, nearly all of which are handled independently of other officers and require no additional assistance. In most situations requiring assistance to the initial officer, any other officer can provide the necessary assistance. In situations which require consultation or advice, assistance may be provided by a more experienced officer or by a supervisor if a supervisory decision is warranted.

In some situations, the initial officer may require assistance from supervisors and other personnel due to the complex nature of an incident, its potential for expansion or the need for a coordinated effort to resolve the incident. These critical incidents include major highway, rail or aircraft accidents; civil disturbances; natural and man-made disasters such as tornadoes, winter

storms, dam failures; pandemics; hazardous materials situations; correctional institution disturbances, hostage/barricaded gunman situations; mass arrests, bomb threats; acts of terrorism and special events requiring significant coordination and planning. It is the purpose of this section to establish procedures for police response to these critical incidents. Incidents of this nature will be handled utilizing procedures outlined in the General Directives Manual, Section 468.00 All Hazards Plan.

B. Responsibilities of the First Arriving Officer

The first arriving officer will normally identify a critical incident fairly quickly. This officer must immediately make radio notification of the nature of the incident and action that is being taken or needs to be taken. This officer must also identify and request whatever assistance is initially needed.

C. Responsibilities of Supervisors

The first-line supervisor and/or the watch commander will respond to the incident scene immediately upon becoming aware of the existence of a critical incident. The first of these to arrive will assume the role of Incident Commander and establish a command post as near the incident scene as possible but far enough away to assure relative safety. In the event that Fire Department or other agencies' personnel are involved in the incident, the command posts should be operated in conjunction with each other so as to provide more effective communications and coordination of efforts. The Incident Commander will advise by radio that he/she has assumed command and will identify the command by location (e.g., "110 {or 102} is assuming I-85 command'). In rare situations that do not allow for static placement of a command post, the Incident Commander's location will be considered the command post. The Incident Commander will then assume the duties delegated to the "first supervisor on the scene" in section 468.00 of the General Directives Manual. The Incident Commander is responsible for direct supervision over police units and other supervisors assisting with the incident.

D. Incident Commander Responsibilities

Upon arrival of the watch commander, the first-line supervisor or initial responding officer in command will brief the arriving commander on the nature of the incident and steps that have been taken to mitigate the incident. The watch commander may then assume the Incident Commander role. The person in the Incident Commander role will assume responsibility for the duties identified in section 468.00 of the General Directives Manual. The Incident Commander will continue in this role until the incident is resolved, until the incident is reduced in scope and command is relinquished to a lower ranking officer, or until command is relinquished to the district commander or division commander.

E. Command of S.W.A.T. Incidents

In the event that the incident is one for which S.W.A.T. is activated (e.g., hostage/barricade, correctional disturbance), command of the incident will be the responsibility of the affected Precinct Commander or Command Duty Officer.

F. District Commander

In cases where the watch commander is effectively handling an incident and there is no reason to relinquish command, the District Commander may return to service or may remain on the scene in a consulting capacity. If the situation is a S.W.A.T. related incident or remains complex and there is a need for involvement of the District Commander due to the influence of his/her rank, the District Commander should assume command as indicated above.

G. Staff Command

The Division Commander will assume the role of staff command and will establish a staff command post. If the Division Commander has delegated acting status to a District Commander, this person will assume the staff command role. If there is no delegation and the Division Commander is not available, the staff command role will be assumed by the District Commander in whose District the incident is occurring. In situations where the Gwinnett County All Hazards Plan is activated, procedures outlined in section 468.00 of the General Directives Manual will be followed. If the Gwinnett County All Hazards Plan is not deployed but there is need of coordination with representatives of other departments or agencies, the staff command post will be established in consultation with the department or agencies involved.

H. Police All Hazards Plan

Unit commanders and supervisors should see that all personnel under their supervision are familiar with procedures outlined in section 468.00 of the General Directives Manual for critical incidents.

**Gwinnett County Police Department**



 

| TYPE OF COMMUNICATION | | DISSEMINATION | | DESTINATION | | NUMBER | | PAGE | OF |
|---|---|---|---|---|---|---|---|---|---|
| General Orders | | Department | | Directives Manual | | 403.00 | | 1 | 3 |
| TOPIC: | Drug, Homemade Explosive, | | EFFECTIVE DATE | SOURCE | | APPROVED BY | | ☐ NEW | |
| | Chemical and Biological Labs | | 04/15/90 | RLK | | AAA | | ☒ AMENDS ☐ RESCINDS | 01/23/17 |

### 403.01  PURPOSE

The purpose of this policy is to make first responders aware of the recognition signs of clandestine laboratories and the isolation, protection and notification procedures for response, investigation and cleanup of clandestine laboratories. These labs can be both fixed and mobile. Safety must be paramount for all personnel involved in operations of this nature. These types of labs include:

- Illegal drugs

- Homemade explosives

- Chemical and biological agents

Clandestine labs can cause three (3) main types of harm:

- Physical injury from explosions, fire, chemical burns and toxic fumes.

- Endangerment to officers and citizens to include children from inhalation, absorption and ingestion.

- Environmental hazards to include contamination.

### 403.02  POLICY

The Department recognizes the need to investigate clandestine laboratories and the inherent risk due to the presence of chemicals and toxic materials. Clandestine labs are exceptionally dangerous, both initially and for long-term health considerations. All clandestine labs must be considered, treated, and handled as toxic waste dumps with all safety requirements of the Occupational Safety and Health Administration (OSHA) observed. The unified incident command system will be utilized in all incident responses. Personnel safety is the number one priority in response to these incidents.

### 403.03  DEFINITIONS

A. Active Laboratory - A clandestine lab that is presently or recently involved in cooking. This includes drugs, homemade explosive, chemical and biological agents. A cook is "active" when chemicals are in the process of being heated, cooled or mixed. This is a high risk situation.

B. Clandestine Drug Laboratory - Facilities equipped and used in the production of illegal drugs. For the manufacture of methamphetamine, these can be located in a variety of locations such as homes, hotels rooms, abandoned buildings, open fields, or in vehicles. In the case of One Pot Labs, these small labs can be easily concealed in a backpack.

C. Cook - The process of preparing chemicals to react with other substances to produce an illicit substance. In many cases, these chemicals and the by-products are considered toxic.

D. Contamination - Exposure to toxic chemicals or other substances that are harmful to human life. Contaminates can be clearly visible (gross contamination) or not. These contaminates can cause both acute and chronic health hazards.

E. Decontamination - The process of cleansing a person, object or substance to remove hazardous contaminates.

F.  Hazardous Waste - Substances that pose substantial or potential threats to public health or the environment. The treatment, storage and disposal of hazardous waste is regulated under the Resource Conservation and Recovery Act (RCRA).

G.  Homemade Explosives - Explosives that can be made from commonly available commercial chemicals. These should always be considered sensitive to heat, shock, friction and electrostatic discharge. Some homemade explosives can be mistaken for narcotics.

H.  Initial Isolation Area - Designed to prevent spread of hazardous materials through cross contamination. Isolation involves physically securing and maintaining a scene by establishing isolation perimeters and denying entry to unauthorized persons.

I.  One Pot Lab - A single bottle or container (commonly in plastic or glass drink bottle) used to produce a small amount of methamphetamine. One Pot Labs generally are under substantial pressure and can explode. They can be easily concealed in a car or carried by a person in a backpack while the cook is active.

J.  Personal Protective Equipment (PPE) - Refers to protective clothing, helmets, goggles, or other garments or equipment designed to protect the wearer's body from injury or infection. The hazards addressed by protective equipment include physical, electrical, heat, chemicals, biohazards, and airborne particulate matter. At the simplest form, it includes: skin, eye and respiratory protection.

K.  Reasonable Observation Period - A span of time deemed by a medical professional to be adequate to see signs or symptoms of toxic exposure. Knowledge of the type and amount of toxic exposure is helpful for proper medical treatment.

## 403.04  INDICATORS OF CLANDESTINE LABORATORIES

- Unknown chemicals/substances that are being chilled (ice bath) or are being heated.

- Unusual or out of place household and laboratory chemicals;

  - This includes acids, peroxides, acetone, drain cleaners, pool chemicals, lye, fuels or fuel tabs.

- Unusual quantities of fertilizers; could be in prill or powder form.

- Energetic materials to include, black powder, smokeless powder, flash powder, and pyrotechnic powder.

- Lab equipment

  - This may include laboratory grade equipment, buckets, hot plates, ice baths, and suspicious venting, piping and distillation equipment. Filters, funnels and grinders, blenders, mixers and ball mills are commonly used. PPE might also be on scene to include rubber gloves or vapor masks.

- Compressed gas cylinders (may contain anhydrous ammonia).

- Visible staining of the floor, ceiling, work areas.

- Fans and fume hoods to evacuate toxic fumes.

- Unusual amounts of over the counter drugs, to include pseudoephedrine.

- Stripped batteries to harvest the lithium.

## 403.05  GENERAL SAFETY PRECAUTIONS, PROTECTION AND EXPOSURE

Special considerations must be observed. These include proper use of Personnel Protection Equipment (PPE), potential of physical injury resulting from working in a confined and non-ventilated space, injury or death due to exposure from toxic chemicals, and booby traps. Do not rush in. Approach cautiously from upwind, uphill or up stream. Attempt an initial isolation area of at least 100 ft. A larger area evacuation might need to be considered.

A clandestine laboratory for the production of drugs, homemade explosives or chemical and biological substances is a toxic waste dump. It might also be a flammable, explosive or oxygen-deficient atmosphere. Chemicals and substances created, production material and equipment, and persons inside the lab will be treated as toxic until decontaminated.

Do not turn switches on or off; unplug cookers, heating elements or cooling and chilling equipment. Do not use matches. Do not touch or taste any substances. Do not open or move any containers with suspected chemicals. Do not sniff any containers. Do not smoke, eat or drink at the site.

First responders need to also be aware of the potential presence of anti-personnel devices such as booby traps or Improvised Explosive Devices (IED). These devices are often designed to protect the lab from intrusion and aid the operator's escape. If you discover any such device, do not move or handle any IED or booby trap.

Once a lab is located, officers will not knowingly re-enter the lab. An active lab should be considered unsafe for re-entry except by trained personnel using appropriate PPE. Upon exiting the lab, decontaminate your clothing, equipment, and exposed skin.

Evacuation of all persons, including suspects, inside the lab should be made within reason. Substances, equipment, material and people removed from a clan lab site will be initially considered toxic and will be decontaminated by the Fire Department.

All personnel who entered the lab site should be decontaminated by the Fire Department and evaluated by EMS. Decontamination should include equipment and clothing. This decontamination should be made on scene to reduce cross contamination of persons, vehicles, equipment and locations.

Effects associated with toxic materials may be temporary or permanent, immediate or delayed, mild or sever. Exposure can come from inhalation, absorption and ingestion. A reasonable observation period will be needed to evaluate contaminated personnel to determine if further medical treatment is needed. Refer to GDM Section 404.00 for reporting guidelines due to exposure.

## 403.06  NOTIFICATIONS

Upon discovery of any clandestine laboratory, the Gwinnett County Fire Department's Hazardous Material Team will be notified. In addition:

A. For drug labs, SIS will also be notified.

B. For homemade explosives, chemical or biological substance labs, the Hazardous Devices Unit (HDU) Commander will be notified through radio communications.

B. If any booby trap is encountered, notify the Hazardous Devices Unit (HDU) through radio communications.

## 403.07   CRIME SCENE PROCESSING, EVIDENCE COLLECTION AND CLEAN UP

Processing of a clandestine lab includes taking photographs with identification labels, making a complete inventory, taking evidentiary samples and preparing chemicals and production equipment for disposal. This must be done in appropriate PPE, as designated by the Fire Department's Hazardous Material Team.

For clandestine drug labs, all finished product can be taken as evidence. For any liquid drugs that need to be seized as evidence, refer to the Property and Evidence Unit Packaging Manual for proper submission. Absolutely no waste or lab equipment shall be placed into evidence. Refer to section 403.08 of this policy for further. If it is determined, appropriate notification of the DEA will be handled by SIS.

For suspected homemade explosives, chemical or biological substance labs, the Hazardous Devices Unit (HDU) will secure appropriate samples for further analysis and transport the samples to an analytical laboratory to maintain the chain of custody. Associated waste will be disposed of through the proper contracted clean up company.

## 403.08   STORAGE OF WASTE PRODUCTS FROM A CLANDESTINE DRUG LAB

The Gwinnett County Police Department participates in the Authorized Central Storage (ACS) Program. This program provides for the temporary collection of hazardous materials taken from a clandestine methamphetamine lab only. Contact the Hazardous Devices Unit (HDU) for packaging guidelines and storage access.

 **Gwinnett**

| TYPE OF COMMUNICATION | DISSEMINATION | DESTINATION | NUMBER | | PAGE | OF |
|---|---|---|---|---|---|---|
| General Orders | Department | Directives Manual | 601.00 | | 1 | 14 |

| TOPIC: Communications Procedures | EFFECTIVE DATE 04/15/90 | SOURCE MNM | APPROVED BY JDM | ☒ NEW ☐ AMENDS ☒ RESCINDS  01/21/25 |
|---|---|---|---|---|

### 601.01  PURPOSE

Increases in Department workload and manpower necessitate guidelines to ensure the proper and efficient use of police radio channels.  Rapid and accurate communications capability is of paramount importance for the command and control of personnel resources and to ensure officer safety.

### 601.02  POLICY

All radio operations will be conducted in accordance with the Federal Communications Commission (FCC) procedures and requirements.

### 601.03  FUNCTIONS/COMMUNICATIONS DIVISION

The Communications Division is a division of the Administrative Bureau. The Communications Division Director commands the Communications Division and provides day-to-day supervision of Communications.

Among the responsibilities of the Communications Division are the following:

A.  Radio Communication – The Communications Division is responsible for the proper dispatch of all emergency calls for service for police, fire, and EMS.

B.  Telephone Communications – Communications is the receiving point for all emergency phone calls from incorporated and unincorporated Gwinnett County.  In addition, the Communications Division is responsible for conducting annual telephone line studies on all emergency phones to determine if the Department has the proper capacity to handle incoming calls.  Administrative line load studies will be done once per year.  All studies will be done in conjunction with AT&T, who will supply the resources.

C.  The Communications Division is responsible for operating the paging/notification system for the purpose of notifying special units that they are being activated and to notify command staff and other personnel of critical or newsworthy events.

D.  The Communications Division is responsible for monitoring various weather alert devices and for notifying all field personnel via radio when severe weather watches or warnings are issued.

E.  The Communications Division maintains a listing of outside agencies and various referral services for providing callers with alternatives in the event that Police, Fire or EMS response is not warranted.

### 601.04  GENERAL GUIDELINES

It is imperative that radio channels remain free of lengthy, unnecessary or non-professional radio traffic so, when needed, a free, unencumbered radio channel is available for use.  Standardized procedures maximize efficiency and increase dispatcher/channel availability for necessary traffic, while reducing the possibility of misunderstanding and error.  The following guidelines will apply:

A.  Access to the Communications Center is restricted and only authorized personnel are permitted access.  Only employees of Communications and sworn members of the Department are authorized entry into the Communications Center. The senior communications officer, communications shift supervisor, and/or Communications Director may allow access to the Communications Center by other personnel on an as-needed basis.

B.  Supervisors shall advise Communications of any manpower deployment changes, which affect patrol area coverage requirements.

C.  Communications personnel will make telephone calls for private citizens at the request of a field unit, but these requests should be limited to those instances in which the citizen is physically or emotionally unable to make the call and/or there is no public telephone within a reasonable distance.

D.  Communications personnel shall not be asked by Department employees to make telephone contact with other Department personnel when the employee wishing to make contact has access to a telephone and can personally attempt the call.

E.  All personnel have access to all common channels and should attempt direct radio contact with other personnel whenever administrative or non-critical information needs to be communicated.

F.  Communications personnel shall not be asked by any employee to make radio contact with another employee when both employees have radio communications capability on a common channel.

G.  Communications personnel will not make telephone calls for field personnel unless there is an immediate need to pass on or obtain information concerning a serious or critical situation.

H.  Communications personnel will not make telephone calls to locations where a police alarm has been activated except at the direction of an officer who has already arrived at the location.

I.  Mobile Data Terminals (MDT) will be used for official Departmental business only. MDT messages will not, under any circumstances, contain any wording that is in violation of the "Unwanted Conduct" policy or any other Departmental policy.

### 601.05  AUTHORITY

Dispatchers issue directions, which carry the authority of an order in terms of assigning calls for service. Dispatchers are responsible for classifying the information available on a situation, determining the time frame of the occurrence and then applying the appropriate Departmental procedures when making assignments. The dispatcher is assumed to have a more complete view of field operations and the availability of resources to adequately respond to calls for service. However, first-line supervisors may change a dispatcher's directions based on their knowledge of a situation.

### 601.06  FIELD SUPERVISOR RESPONSIBILITIES

A.  The field supervisor shall monitor the radio traffic of personnel under his/her command to ensure that proper radio techniques are employed and that excessive numbers of units do not respond to calls. It is the field supervisor's responsibility to ensure that back-up units are dispatched on calls of a serious or potentially violent nature. These calls include, but are not limited to, the following:

1.  Any crime in progress
2.  Any crime having just occurred where there is a need to search or secure an area
3.  Calls involving weapons
4.  Domestic calls
5.  Intoxicated, disorderly, or persons suspected of suffering from mental health issues
6.  Any serious injury
7.  Alarms

The field supervisor will clear on the initial call and notify the dispatcher of the units to be sent as back-up units. By clearing on the call, the supervisor assumes responsibility for directing subsequent response to the call, but may not necessarily be enroute. The dispatcher will ask field supervisors who do not clear if they are clear. Zone cars clearing on calls will be understood to be enroute as back up. If a zone car requests a back up, Communications personnel will dispatch the closest available unit and ascertain if the field supervisor is clear.

B.  Field Supervisors should not interfere with or overrule assignments, which are made by dispatchers unless extenuating circumstances or other information exists.

C.  Field Supervisors shall ensure that Communications personnel are properly following applicable procedures and that any infractions are reported to the affected Communications supervisor.

## 601.07  FIELD UNIT RESPONSIBILITY

Each sworn member of the Department is issued a portable radio.  It is the responsibility of each member of the Department to monitor their radio while on duty or operating their county vehicle.  Members of the Department will promptly notify Communications personnel upon their arrival and departure from calls, during traffic stops and any other time the officer will be physically out of their patrol unit for an extended period of time.  Each member shall use the appropriate CAD features on their MDT's prior to initiating radio traffic when applicable to do so.

## 601.08  PHONETIC ALPHABET

Members of the Department shall utilize the International Phonetic Alphabet when transmitting tag letters or spelling words on the radio.  The Federal Communications Commission, the International Civil Defense and the military for two (2) reasons chose the International Alphabet for use.

A. No word sounds like any other word and it would be difficult to make an error in understanding it.

B. It has proven to be the easiest to hear and remember.

| A | Alpha | N | November |
|---|-------|---|----------|
| B | Bravo | O | Oscar |
| C | Charlie | P | Papa |
| D | Delta | Q | Quebec |
| E | Echo | R | Romeo |
| F | Foxtrot | S | Sierra |
| G | Golf | T | Tango |
| H | Hotel | U | Uniform |
| I | India | V | Victor |
| J | Juliet | W | Whiskey |
| K | Kilo | X | X-Ray |
| L | Lima | Y | Yankee |
| M | Mike | Z | Zulu |

## 601.09  CALL SIGNALS/TEN CODES

Members of the Department shall utilize the call signal and/or ten systems applicable to the situation and problems arising most frequently as described:

### CALL SIGNALS

| 1S | Stolen Vehicle | 3B | Fire Alarm - Business |
|----|----------------|----|----------------------|
| 1SIP | Stolen Vehicle in Progress | 3CO | Carbon Monoxide Alarm |
| 1SJO | Stolen Vehicle Just Occurred | 3H | Fire Alarm - High Rise, Hotel, Motel |
| 1A | Abandoned Vehicle | 3HC | Fire Alarm - Health Care |
| 1CJ | Carjacking | 3M | Medical Alarm |
| 2B | Police Alarm - Business | 3R | Fire Alarm - Residential |
| 2H | Police Alarm - Hospital, High Rise, Health Care | 3S | Fire Alarm - School |
| 2R | Police Alarm - Residential | 4 | Ambulance |
| 2S | Police Alarm - School | 5 | Bomb Threat |
| 2V | Police Alarm - Vehicle | 6 | Explosives Located |
| 3A | Fire Alarm - Apartment | 7 | Explosion Complaint |

| | | | |
|---|---|---|---|
| 8 | Part-Time Job | 33S | Fire - School |
| 9 | Court | 33T | Fire - Trash |
| 10 | Training | 33TT | Fire – Tractor Trailer |
| 11 | Call Medical Examiner | 33V | Fire - Vehicle |
| 12 | VIN Verification | 33W | Fire – Woods/Grass |
| 13 | Trash Dumping | 34 | Gambling |
| 13IP | Trash Dumping in Progress | 35 | Police HQ |
| 14 | Threats | 36 | Hazmat Incident |
| 15 | Phone Call Complaint | 37 | Illegal Parking |
| 16 | Civil Papers | 38 | Illegal Drugs |
| 17 | Warrants | 39 | Information |
| 18 | Respond On MDT | 40 | Assault |
| 19A | Smoke Odor - Apartment | 41 | Auto Accident |
| 19B | Smoke Odor - Business | 41I | Auto Accident - Injuries |
| 19H | Smoke Odor - High Rise, Hotel, Motel | 41C8 | Auto Accident -Trapped |
| 19HC | Smoke Odor - Health Care (hospital, | 42 | Burglary |
| | personal care home, nursing home, etc.) | 42IP | Burglary – In Progress |
| 19R | Smoke Odor - Residential | 42JO | Burglary |
| 19S | Smoke Odor - School | 43 | Hit and Run |
| 20 | Animal Complaint | 43JO | Hit and Run – Just Occurred |
| 21 | Vicious Animal | 43I | Hit and Run – Injuries |
| 21I | Vicious Animal/Injury | 44 | Robbery |
| 22 | Area Check | 44IP | Robbery – In Progress |
| 22P | Area Check/PR | 44JO | Robbery – Just Occurred |
| 23 | Juvenile Complaint | 44P | Robbery - Personal |
| 24 | EDP (Emotionally Distressed Person) | 45 | Theft |
| 24V | EDP Violent | 45V | Theft from Vehicle |
| 25 | Discharging Firearms | 45IP | Theft – In Progress |
| 26 | Discharging Fireworks | 45JO | Theft – Just Occurred |
| 27 | Homicide | 45PIC | Theft – Perp in Custody |
| 28 | Person Drunk | 46 | Person Hit By Auto |
| 29 | Fight | 46I | Person Hit By Auto - Injury |
| 30 | Drunk In Auto | 47 | Drowning |
| 31 | Wires Down | 47R | River Rescue |
| 32 | Escaped Prisoner | 48 | Person Dead |
| 33A | Fire - Apartment | 49 | Rape |
| 33B | Fire - Business | 49IP | Rape in Progress |
| 33BV | Fire - Burn Violation | 50 | Person Shot |
| 33D | Fire - Dumpster | 50X | Active Threat |
| 33H | Fire - Hotel | 51 | Person Stabbed |
| 33HC | Fire - Healthcare | 52 | Reserved |
| 33HR | Fire – High Rise | 53 | Suicide |
| 33M | Fire - Marine | 53A | Suicide Attempt |
| 33R | Fire - Residence | 53OD | Suicide/Overdose |

| | | | | |
|------|-------------------------------------------------------|------|-------|---------------------------------------|
| 53T | Suicide Threats | 77 | | Aircraft Down |
| 54A | Suspicious Activity | 78 | | Look-Out |
| 54P | Suspicious Person | 79 | | Train Derailment/Accident |
| 54V | Suspicious Vehicle | 80 | | Chase in Progress |
| 55 | Trouble Unknown | 81 | | Street Hazard |
| 55S | School Alarm | 82 | | Paddy Wagon Request |
| 56 | Missing Person | 83 | | Wanted Person Located |
| 56R | Missing Person/Runaway | 84 | | Work Traffic |
| 57 | Noise Complaint | 85 | | Wrecker |
| 58 | Abduction | 86 | | Domestic |
| 59 | Meet With | 86AGG | | Aggravated Domestic |
| 60C | Crime Against a Child(ren) | 87 | | Contact Message |
| 60D | Crime Against Disabled Persons | 88 | | Property Damage |
| 60E | Crime Against Elderly Persons | 88IP | | Property Damage in Progress |
| 61 | Fire/Safety Inspection | 88JO | | Property Damage Just Occurred |
| 62 | OB Call | 89 | | Wash Down |
| 63 | Officer Needs Help | 90 | | SWAT Call |
| 64 | Property Found | 91 | | 911 Contact |
| 65 | Solicitation | 92O | | Gas Leak Outside |
| 65P | Prostitution | 92IN | | Gas Leak Inside |
| 66 | Peeping Tom | 93 | | Trespassing |
| 67 | Person Down | 94 | | Loitering |
| 68 | Person Screaming | 95 | | Request to Eat |
| 69 | Person Armed | 96 | | Stranded Motorist |
| 70 | Prowler | 97 | | Fraud |
| 70B | Prowler Breaking | 97IP | | Fraud in Progress |
| 71 | Public Indecency | 98 | | Forgery |
| 71IP | Public Indecency in Progress | 98IP | | Forgery in Progress |
| 72 | Traffic Violation | 99 | | Ordinance Violation |
| 73 | Cave In/Collapse | 99F | | Ordinance Violation Fire |
| 74 | Alcoholic Beverage Violation | 100 | | Rifle Deployed |
| 75 | Shooting Air Rifles | 101 | | Advise When Clear for Secure |
| 76 | Assist Citizen | | | Transmission |
| 76K | Keys/Kids Locked In Vehicle | JO | | Just Occurred |
| 76L | Lightning Strike to Structure – No smoke/fire visible | IP | | In Progress |
| 76T | Tree on house (no injuries) | MCI | | Mass Casualty Incident |
| 76W | Water in house/building | | | |

## TEN CODES

| | | | | |
|------|-------------------|------|----------------------|
| 10-0 | Use Caution | 10-2 | Receiving Well |
| 10-1 | Receiving Poorly | 10-3 | Stop Transmitting |

| | | | |
|---|---|---|---|
| 10-4 | OK/Understood | 10-29 | Check NCIC |
| 10-5 | Relay | 10-30 | Unnecessary Radio Traffic |
| 10-6 | Busy/Not Available | 10-33 | Emergency |
| 10-7 | Arrived on Scene | 10-36 | Correct Time |
| 10-8 | In Service | 10-37 | Pullover/Traffic |
| 10-9 | Repeat | 10-38 | Pullover/Susp. Criminal |
| 10-10 | Temporarily Out of Service/Available for Calls | 10-39 | Resume Routine Traffic |
| 10-12 | Stand By | 10-41 | Beginning Tour of Duty |
| 10-13 | Weather/Road Conditions | 10-42 | Officers Residence |
| 10-18 | High Rate of Speed | 10-59 | Escort/Convoy |
| 10-19 | Return to Station | 10-60 | In the Area of |
| 10-20 | Location | 10-74 | Negative |
| 10-21 | Call _____ | 10-75 | Make Contact With _____ |
| 10-22 | Cancel/Disregard | 10-76 | Enroute |
| 10-23 | Contact Licensed Driver | 10-77 | ETA |
| 10-25 | Request Criminal History | 10-81 | Intoximeter Operator |
| 10-26 | Request Driving History | 10-86 | Operator on Duty |
| 10-27 | Request Driver's License Information | 10-95 | Prisoner In Custody |
| 10-28 | Registration Request | 10-99 | Wanted/Stolen Indicated |

## 601.10  STATUS CODES

Status codes are utilized by officers to advise dispatchers in a very brief way of the status of the call they handled.

Example: 112 have responded to a domestic argument that has resulted in the officer advising the parties about warrants. The proper radio communication when the officer returns to service should be:

112, Code 17 and 26

The officer will encode the appropriate code status on the MDT and the officer will advise the dispatcher of his/her code status.  The dispatcher will ensure that the code status has been recorded on the CAD system.  The officer will record the same code(s) in the appropriate space provided on his/her activity sheet.

The following is a list of the status codes utilized by the Department:

CODES

| | | | |
|---|---|---|---|
| Code 1 | Answer Call Emergency | Code 13 | At precinct assisting citizen |
| Code 2 | Answer Call Without Delay | Code 14 | Not an 81/Not 10-99 |
| Code 3 | Answer Call Routine | Code 15 | False alarm/calls by adverse weather |
| Code 4 | Everything's Alright/Under Control | Code 15C | Alarm cancelled by alarm company after |
| Code 6 | Unable To Locate | | officer has been dispatched |
| Code 7 | Request One Unit For Backup | Code 16 | Handled by Animal Control |
| Code 8 | Person Trapped | Code 17 | Incident Report Made |
| Code 9 | Stakeout | Code 18 | Arrest Report Made |
| Code 10 | Request Investigator | Code 19 | Accident Report Made |
| Code 11 | At precinct handling administrative matter | Code 19 | Accident Report Made - Private Property |
| Code 12 | At precinct in meeting | Code 20 | Citation/Warning Issued |

| | | | |
|---|---|---|---|
| Code 21 | Message Delivered/Contact Made | Code 33 | Info Forwarded To Detective |
| Code 22 | Gone on Arrival | Code 34 | Couldn't Get Anyone to the Door |
| Code 23 | Crowd Dispersed | Code 35 | Assisted Stranded Motorist |
| Code 24 | Noise Compliant Quieted | Code 36 | Picked Up Warrant |
| Code 25 | Civil Matter | Code 37 | False Alarm/Building Secure |
| Code 26 | Domestic Advised On Warrants | Code 38 | False Alarm/Employee |
| Code 27 | Complainant Is Signal 28 | Code 39 | True alarm (report requested) |
| Code 28 | Suspicious Person Not 10-99 | Code 40 | Infectious Disease |
| Code 29 | Incident Handled By Fire Dept | Code 41 | Impounded Vehicle |
| Code 30 | Other Jurisdiction - General | Code 42 | Criminal Trespass Warning Issued |
| Code 31 | Missing Person Located | Code 43 | K-9 Deployment Report |
| Code 32 | No Report Requested | | |

\*\*\*C30 will indicate a call was not within Gwinnett County Police jurisdiction. The following codes will be used to specify if the jurisdiction was one of these cities located within Gwinnett County unincorporated.

C30A   Snellville police jurisdiction
C30B   Lilburn police jurisdiction
C30C   Norcross police jurisdiction
C30D   Duluth police jurisdiction
C30E   Suwanee police jurisdiction
C30F   Lawrenceville police jurisdiction

**Note** - Code 7 one time means the officer is in need of one officer for back-up in a dangerous situation, Code 7 two (2) times, etc., increases the number of officers requested. Signal 63 means all officers available be enroute Code 1. All officers responding must clear on the air. If an officer needs another officer in a routine, non-emergency, matter, call for a 59.

**601.11   USE OF MILITARY TIME**

Members of the Department will utilize the military twenty-four (24) hour system in order to present a clear understanding of the time in question as well as to present a complete and professional broadcast.

The military time system will be used in all transmissions as well as on the radio log, call cards, activity logs, and teletypes. In addition, military time will be used on any other Departmental document that requires the time.

**EXAMPLES**

| | | | |
|---|---|---|---|
| 2400 | midnight | 1200 | 12 p.m. |
| 0001 | one minute after 2400 | 1300 | 13 p.m. |
| 0100 | 1 a.m. | 1400 | 14 p.m. |
| 0200 | 2 a.m. | 1500 | 15 p.m. |
| 0300 | 3 a.m. | 1600 | 16 p.m. |
| 0400 | 4 a.m. | 1700 | 17 p.m. |
| 0500 | 5 a.m. | 1800 | 18 p.m. |
| 0600 | 6 a.m. | 1900 | 19 p.m. |
| 0700 | 7 a.m. | 2000 | 20 p.m. |
| 0800 | 8 a.m. | 2100 | 21 p.m. |
| 0900 | 9 a.m. | 2200 | 22 p.m. |
| 1000 | 10 a.m. | 2300 | 23 p.m. |
| 1100 | 11 a.m. | 2301 | one minute after 11 p.m. |

## 601.12  UNIFORM PATROL RADIO NUMBER ASSIGNMENTS

The numbering system for uniform patrol zones utilizes three (3) numbers and a letter to designate the district, precinct and zone assignment of the officer using the radio number.

Maps are posted at all precincts showing the boundaries of all districts, precincts, sectors, and zones.

The following offers an explanation on how patrol zone designators were formulated:

A.  The County has been divided into six (6) districts.

| District #1 | West | District #4 | East |
|---|---|---|---|
| District #2 | South | District #5 | Central |
| District #3 | North | District #6 | Bay Creek |

B.  Each district is divided into sectors.  Each sector is divided into zones for purposes of work assignments.

C.  Each district has been given a number assignment.  West #1, South #2, North #3, East #4, Central #5 and Bay Creek as #6. The first number is your radio call number and will also be your precinct assignment, for example (1), (2), (3), (4), (5), (6).

D.  Each sector has been assigned a number within the precinct boundary numbering 1-5 and will be the second number of your radio call number, for example (1), (2), (3), (4), (5). Sector #5 is not currently being used and will be reserved.

E.  Each sector has been divided into zones and given a number 1-7. The zone assignment will be your third radio call number.

F.  Each shift has been assigned a letter, which is the last call letter of your radio call number assignment (Day Watch (A), Day Watch (B), Night Watch (C) and Night Watch (D)).

### EXAMPLES

West Precinct #1
Sector 3, Zone 4, Day A, 134A

North Precinct #3
Sector 4, Zone 1, Day B, 341B

South Precinct #2
Sector 2, Zone 2, Night C, 222C

East Precinct #4
Sector 4, Zone 1, Night D, 441D

G.  Each officer, when assigned a radio call number, will use that number after shift when needed until arrival at home or final destination for the day. This will enable supervisors and Communications personnel to readily identify personnel not assigned to the on-duty shift who may need to call Communications; for example, late calls or arrests.

H.  Each watch will be capable of having float cars, which will be assigned to a specific sector and overlap several zones. The radio assignment for a float car will consist of its district and sector assignment and will end in an eight (8) or a nine (9).  For example, a float car assigned to West (District #1) – Sector Two (2) on the day watch would have a radio assignment of 128B.

I.  Each watch will be capable of having a sergeant assigned to each sector; however, sergeants will be responsible for all sectors and zones within their assigned district unless otherwise directed by the precinct or watch commander. The radio assignment for a sergeant will consist of its district and sector assignment and will end in the number zero (0). For example, a sergeant assigned to South (District #2) evening watch could be given one of the following radio assignments: 210C, 220C, 230C, 240C or 250C.

J.  Radio assignments for lieutenants will be determined by their district and watch assignment. Day watch lieutenant's radio assignments will end with 02 and 03 and night watch with 04 and 05. For example, a lieutenant assigned to East

Precinct (District #4) day watch rotation A would have a radio assignment of 402 and a day watch lieutenant assigned to East Precinct (District #4) rotation B would have a radio assignment of 403.

K.  Radio assignments for district commanders will be determined by their district assignment and will end with 01. For example, the division commander for the North precinct would have a radio assignment of 301.

## 601.13  RADIO NUMBER ASSIGNMENTS

It shall be the responsibility of the Communications Division to assign and maintain a radio assignment list for Departmental personnel. Requests for changes or additions to the radio assignment list should be submitted in writing to the Communications Director.

## 601.14  GENERAL CALL DISPATCH PROCEDURES

Calls for service will be given a priority rating of one (1) through nine (9) depending upon the nature of the call.  A priority one (1) call is one of primary importance and will be responded to without delay, and a priority nine (9) is one of least importance and will be responded to when there are no calls of higher priority pending.  The Communications Division when dispatching calls for service shall utilize the following format:

Calls for service with a priority rating of 1 thru 3 – The dispatcher will call the assigned unit and wait for a response. The officer will acknowledge with his/her unit number. The dispatcher will then repeat the unit number; relay the signal, location (including nearest cross street) and other pertinent information pertaining to the call. The officer will then acknowledge with his/her unit number.

Calls for service with a priority rating of 4 thru 9 – The dispatcher will call the assigned unit and wait for a response. The officer will acknowledge with his/her unit number. The dispatcher will then repeat the unit number, relay the signal, and advise the location and nearest cross street.  The officer will acknowledge with his/her unit number and will refer to the MDT for complete address/location and information regarding the call. In the event that the officer's unit is not equipped with an MDT or the MDT is inoperable, complete information will be given upon request.

## 601.15  GENERAL INFORMATION ACCESS PROCEDURES

The following formats should be utilized for accessing information:

A.  Pull Over on Suspected Criminal Activity

When checking suspected criminal activity, the officer will notify the dispatcher of the unit number and that he/she is "10-38"." There will be no further traffic until the dispatcher acknowledges by the unit number and "10-38." The officer will then respond with the unit number, location and a brief description of the vehicle or person being checked.

B.  Vehicle Pull Overs (Traffic)

When pulling over traffic violators, the officer will notify the dispatcher of the unit number and that he/she is "10-37." There will be no further traffic until the dispatcher acknowledges by the unit number and "10-37." The officer will then respond with the unit number, location, tag number, and brief description of the vehicle; for example, 412, 85 northbound at 316, AFL-114, a red Chevrolet Impala.

C.  Driver's License, Driver's Histories, Criminal Histories, and Wanted Checks
When requesting a driver's license verification (10-27), Driver's History request, specifically DUI Arrests (10-26), Criminal History requests (10-25), or a wanted person check (10-29), the name, date of birth, driver's license number (if available), sex and race must be furnished to the dispatcher.  (Race is not needed for a 10-27 – only the sex, however, race could help identify a hit response.)  Driver's History information cannot be given over radio frequencies. Therefore, a numeric coded message is given for Driver's History returns.  When the officer asks for a 10-26, radio should respond, "10-26, #." Criminal History Records may be broadcast via radio for the following reasons:

1.  when an officer determines there is an immediate need for this information to further an investigation.
2.  there is a situation affecting the safety of an officer.
3.  there is a situation affecting the safety of the general public.

For non-emergency Criminal History requests, officers should contact the GCIC office by telephone to obtain them. Officers can also obtain this information from on-duty GCIC techs at the jail.

D.   Article or Firearms Checks

When requesting wanted checks on articles or firearms (10-29), the following information is needed: Brand name, serial or manufacturer applied number and type of article (gun, camera, T.V., etc.).

E.   Vehicle Registration/Stolen Vehicle Checks

When requesting a vehicle registration check (10-28) or a stolen vehicle check (10-29), the following information is needed by the dispatcher: Tag number, state of tag, type of vehicle, vehicle year, if it is an out-of-state tag, and vehicle identification number if the vehicle does not have a tag displayed.

F.   Prisoner Transport Traffic

When an officer makes an arrest, the following radio traffic shall be used when transporting or escorting an arrestee to the jail or to Headquarters.

For All Arrestees:  112, 10-95 (arrestee's sex/juvenile status) to (destination) and (beginning odometer reading).  If there is more than one (1) arrestee:  112, 10-95 (the sex/juvenile status for each arrestee) to (destination) and (the beginning odometer reading).

Upon arrival at the destination: 112, 10-7 followed by the ending odometer reading.

Dispatcher will acknowledge officer with the correct time, for example, 112 – 1045 hours.

When an officer has made an arrest and is transporting the offender to Headquarters or the jail, any 10-27, 10-28 or 10-29s that are not immediately necessary shall be handled by phone after arrival at Headquarters or the jail.  Officer can contact GCIC/NCIC by telephone.

G.   Wrecker Requests

When requesting a county contract wrecker, the officer simply needs to relay to the dispatcher his unit number and "signal 85."  The dispatcher will contact the appropriate wrecker service for dispatch by using information furnished by the officer during the traffic stop and notify dispatcher of any special equipment, i.e. flatbed, needed at time of initial request.

After contacting the wrecker service, the dispatcher will advise the requesting unit that the wrecker is enroute: 112, signal 85, 10-76.  The requesting unit does not need to acknowledge this transmission.

The county wrecker contract allows for a thirty (30) minute response to the scene; therefore, officers should not repeat requests or ask for estimated time of arrival.  If the response exceeds the thirty (30) minute allowance, officers should take into consideration conditions that might affect wrecker response, such a traffic or weather before recontacting the dispatcher.

H.   Use of Radios – Off-Duty

Officers that need to use their radio while off duty, whether in their patrol unit or not, should identify themselves to the dispatcher using their badge number.

Example:  "Badge 123 to radio"

The dispatcher will respond and acknowledge the traffic by "badge number 123." Other radio traffic (tag checks, wanted checks, etc.) is conducted as usual.  The dispatcher will use the badge number for any other contact required with the officer.

A list of badge number assignments is kept in Communications to identify officers by name if necessary.

I.   Request for Language Translation Services

When a department employee needs to communicate with a non-English speaking person and it has been determined that a translator is not readily available, the employee should utilize the Department's approved translation service.

## 601.16  COMPUTER AIDED DISPATCH (CAD)

Communication officers use CAD to prioritize and record incidents, identify the status and location of responders in the field, and effectively dispatch responder personnel. All calls for service that are documented in CAD will be time stamped with information regarding the date and time the call was created, the time the call was entered, the time the call was dispatched, when the first officer was enroute, when the first officer arrived on scene, when the call was closed, the disposition of the call, and the time when officers returned to service. CAD also identifies all back-up units and other personnel attached to the call and timestamps their activity as well. CAD interfaces with records management systems and mobile data terminals (MDT's). Personnel with access to MDT's are able to use the self-dispatching feature to show that they have arrived on scene, document any additional information regarding the call that was observed/obtained on scene, note the appropriate clearance code and put themselves back in service.

## 601.17  MOBILE DATA TERMINAL

The mobile data terminal (MDT) is a laptop computer issued to sworn officers.

The following guidelines apply regarding usage:

- only County approved software can be loaded on the MDT;
- only authorized individuals, IT personnel, can load software on the MDT;
- unauthorized introduction of software programs or other files is strictly prohibited; and
- users are not allowed to manipulate or alter the configuration or software on the MDT.

It is the responsibility of the officer to log themself onto the system whenever reporting for duty or when utilizing the issued vehicle on a part-time job. This should be done prior to advising dispatch over the air. Officers will not remain logged on to the MDT/CAD system when off-duty, unless they are a) on a department approved part-time job, or b) enroute to or from their scheduled shift.

The MDT is programmed to allow the officer to place themself enroute (F1), on-scene (F2), in-service (F3), and close call (F4). Officer initiation of these commands will dynamically update the incident history; officers will utilize these commands whenever possible.  If the officer is not equipped with an MDT or is otherwise unable to initiate these commands due to system malfunction or severity of call, the dispatcher will do so upon verbal advisement.

The MDT is to be used as a supplemental line of communication and in no way replaces current policy for dispatch of calls. Officers may utilize the MDT to self-dispatch themselves to the following signals: 10-21, 22, 22P, 39, 76, 8, and COAP. Officers may also place themselves in the Out of Service Status (OOS) using the MDT. When placing themself in this status, the officer must select the reason option from the list of choices. Once he/she selects the reason by highlighting it, the officer will need to select the right arrow. This will move the reason over to the selected field. Once completed, click submit. This will update their status on the MDT and immediately change their status in CAD as well. The status change will be rejected if the reason is not selected. All other field-initiated incidents must be aired over the radio for dispatch assignment.

The MDT provides access to GCIC/NCIC files and all rules and regulations that govern the release of this information apply. The MDT also provides access to other Gwinnett terminals operating on the system. All users should conduct their communication in a manner which is above reproach and is defensible from criminal and/or civil litigation.  All messages and languages contained within shall adhere to departmental policy regarding conduct. All MDT traffic can be obtained under the Open Records Act.  Personal MDT traffic should be kept to a minimum. Additionally, messages received by Communications from field units will be of lower priority than voice transmissions. Supervisors will review electronic transmission when completing the "Officer Activity Audit." Officer activity audits will be completed using the Manager Self Service (MSS) portion of ESS. The supervisor is responsible for conducting audits on ten (10) percent of their assigned personnel on a monthly basis.

The following operating procedures apply to all Mobile Data Terminals used by this Department.

### Log-on Procedure

A.  When an officer powers up their MDT, the Mobile UX software will automatically launch and a prompt will be received for any updates that need to be performed prior to logging on to the system.

B. Once all necessary updates have taken place, the officer will sign in using their windows username and password. The system will allow three (3) sign on attempts before a user will be locked out. Once locked out, a user must contact the ITS Service Desk to have their password reset.

C. The next screen will require the officer to select their Unit from a list of available options. The system will recognize the officer who signed in on the device, but in the event of a two-man unit, the second officer must be selected from the list of names by double-clicking. This will move the name over to the selected field. Hitting submit will add that officer to the Unit. If the correct information has been submitted, the user will be shown in the correct unit and home sector.

D. Logging on to the system as an off-duty unit is completed in the same manner as above. However, the unit selected will be the users badge number preceded by a P instead of a B (Example: P123).

### Log-off Procedure

A. If a user is not assigned to a call, they may log off by selecting the big blue button labeled Logout. The user must then confirm their intent to log out by selecting the logout button.

B. The system will show that you are being logged off. Once the main sign on screen reappears and the status button shows logged out, the user is fully logged out of CAD.

### QAC/QPC Button (F7) Query Active and Pending Calls

Once selected, this screen will show active and pending calls based on your incident watchlist selections. This screen will continually update in conjunction with CAD. The top half of the screen displays active calls, while the bottom half shows pending calls. Columns can be used to sort the displayed calls. Depending on the number of sectors selected in the watchlist, the recommended sort column for active calls is units and district for pending calls. Call details may be viewed by clicking on the ID number, call number, or signal and it will automatically show you additional details about that call.

### Reviewing Closed Calls

Closed calls can be located in two (2) different manners. The first is by clicking on the actions tab and then selecting case number search or get incident. This provides a form that allows the user to enter different data elements to search for the call. The second is by clicking on the search button at the top of the screen, filling in the appropriate information and then clicking submit. The system is designed to automatically search the preceding 24-hour period. If necessary, the user can select the 7-day search option or the custom range dates tab that works in 30-day intervals. Any data entered in the search form will be remembered so it will be necessary for a user to reset the form when a new search needs to be conducted.

### Unit Status (F8)

This function will show all units logged on in the system. If a user is logged on as a zone unit, the system will default to the appropriate home sector for that zone unit. For example, if a user is logged on as 211B, the system will show all units logged on in the South sector. Additional units may be viewed by using the filter button on that screen. This screen can become congested if several sectors are selected. The search field with the magnifying glass located just above the header row can be used to search any visible column to navigate and locate specific units more easily.

### Messages (F5) or the Envelope Icon

Mobile UX does not utilize a command line to make comments or send messages. Comments can be entered directly into the call from the comments window or when the user closes the call. Messages are sent using the message switch which is like sending an email. A message can be sent by selecting the New Message button and then selecting the recipient in the To Field. Recipients can be located using the intended receiver's last name, unit number, or by selecting a terminal ID or sector to send to everyone in that sector.

### Records Check (F10)

Select the New Query button. If the favorites area is blank, select the all queries tab and then in each of the query categories, select the appropriate form by clicking on the heart to save as a favorite. The following are recommended for each section.

1. Person Query from Mobile COMBOQUERIES
2. Vehicle Query from Mobile COMBOQUERIES

3. Gun Query from Mobile COMBOQUERIES
4. Property QUERY from Mobile COMBOQUERIES

The system also has the quick plate search (F6). Enter the license plate information in the area indicated by the hashtag. This search will default to Georgia but may be changed by clicking or tabbing to that field and typing the appropriate state abbreviation. Once all information has been entered, press enter, and the return will go to the records check main page. The user can press (F10) to navigate that page or click on the bell icon at the top right of the page.

Note: Anytime something is underlined, that indicates that there is a hyperlink. By clicking the hyperlink, a user can retrieve more information on the incident number, location, or unit number.

Miscellaneous Tools

MAPS (F9) – This map provides geographical information on both active and pending calls as well as units based on the user's incident watchlist and unit status filters.

CARDFILE SEARCH (Alt +C) allows the user to access tables of additional information such as gate codes.

CAD/RMS/BWC button provides links to each of these webpages.

There are also additional hyperlinks to several useful webpages.

1. LPR Sites (Flock and HIDTA)
2. GA P.O.S.T. (Both officers' information and online classes)
3. What3Words – Website used by dispatch for individuals unsure of their location
4. Resources – Jailtrack, Vehicle Information (state site), County Ordinances, Police 2 Police
5. PowerDMS

I'm OK Button

This is used as an emergency button and has a three (3) second delay in case it is accidentally hit. Once activated, a message is sent to all logged on users letting them know that the initiating unit needs help.

**601.18 RADIO EQUIPMENT**

The Gwinnett County Police Department operates an 800 MHZ radio system and is committed to providing its members with portable two-way radios with state of the art industry technology. In order to provide this standard, the following guidelines have been established:

Modifications, alterations to factory specifications or added accessories to any radio issued by this Department are not permitted without the consent of the Uniform Division Commander. Modifications include twisting, bending or otherwise altering the antenna from its original configuration. Replacement of issued antennas or use of non-issued, unapproved aftermarket microphones or other attachments to the radio are prohibited. Earpieces are allowed as long as they do not alter the antenna or microphone from its original specification.

Officers assigned to specialized units may attach a Department issued surveillance kit or any microphone kit approved for particular job assignments (i.e. HDU, Motor, SIS, SWAT). These microphone kits must be approved by the Uniform Division Commander.

All employees are responsible for the proper care and safekeeping of their issued portable radios. The employee shall verify that the battery is fully charged and that the portable radio is not damaged before each tour of duty. Any radio or radio battery issued by this Department that appears to be malfunctioning shall be taken to the Gwinnett County I.T. Department located at the PD Annex during normal business hours for repair.

All radio programming configurations must be approved by the Communications Division Director. Employees must obtain approval before having any radio channels added or deleted from the original radio profile.

All requests made to the Communications Division Director will be via email and a copy of the request and verification will be maintained by the Communications Division Director.

**601.19  RADIO CONTACT WITH OTHER AGENCIES**

Officers have the capability to contact other agencies within Gwinnett County using the 800MHZ radio system. Switching to the "all-county" channel and calling the radio number assigned to that agency can accomplish this. If contact with the desired agency is not achieved using this method, the officer may contact the dispatcher who will in turn contact the agency by other means. Other police agencies in Gwinnett County use the same signal and codes as this Department.

**601.20  POLICE HAZARDS**

Police hazards are any potential or actual situation, or person, that poses a threat to the safety of officers or law enforcement operations. These hazards may be permanent or temporary in nature.

In order to ensure that information concerning these hazards is communicated to all members of the Department, or other affected Departments, the following procedures will be used:

A.   If the hazard is immediate in nature, Communications personnel should be advised immediately. Communications personnel will ensure that other department personnel, or other affected departments, are notified.

B.   If the hazard is long-term, the officer observing the hazard will provide the Crime and Intelligence Analysis Unit a memorandum describing the nature of the hazard and all other pertinent information. The Crime and Intelligence Analysis Unit will publish this information as a special bulletin. The officer encountering the hazard will also ensure that their immediate supervisor is aware of the hazard. It will be their responsibility to notify the oncoming shift so the information is communicated at roll call.

**601.21  RESERVING RADIO CHANNELS**

Most radio channels are designated for normal daily operations and do not need prior approval to utilize. However, there are channels that are reserved for special operations or events. These radio channels include: All DPS, Event Channels, Interop channels, 8 tac channels and UASI channels. If one of these channels is needed for an operation or event, it must be reserved by contacting the Communications Division Director or Operations Manager, via email, and receiving approval prior to utilizing the channel. Requests should be made to the Communications Director or Operations Manager for reserved channels that need to be monitored by a dispatcher or recorded.

 **Gwinnett**

**GWINNETT COUNTY POLICE DEPARTMENT**

| TYPE OF COMMUNICATION | | DISSEMINATION | | DESTINATION | | NUMBER | | PAGE | OF |
|---|---|---|---|---|---|---|---|---|---|
| General Orders | | Department | | Directives Manual | | 307.00 | | 1 | 9 |
| **TOPIC:** Production of Records/Documents | | **EFFECTIVE DATE** 09/11/98 | | **SOURCE** DLB/JJJ | | **APPROVED BY** JDM | | ☒ NEW ☐ AMENDS ☒ RESCINDS | 09/29/23 |

### 307.01  PURPOSE

To provide information and guidelines for the production of information and documents created and maintained by this Department, either under the Georgia Open Records Act or through a Subpoena for the Production of Evidence.

### 307.02  POLICY

Members of the Department will comply with the provisions of the Georgia Open Records Act (O.C.G.A. 50-18-70) and respond to Subpoenas for the Production of Evidence.

### 307.03  GEORGIA OPEN RECORDS ACT/EXCLUSION

Generally, requests for documents/information are processed in accordance with the Georgia Open Records Act.  Under the Georgia Open Records Act (O.C.G.A. 50-18-72 (a)), public disclosure shall not be required for records that are:

A.  Specifically required by the federal government to be kept confidential;

B.  Medical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy;

C.  Except as otherwise provided by law, records compiled for law enforcement or prosecution purposes to the extent that production of such records would disclose confidential investigative or prosecution material which would endanger the life or physical safety of any person or persons, or disclose the existence of a confidential surveillance or investigation;

D.  Records of law enforcement prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, other than initial police arrest reports, and initial incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving said investigation and prosecution has become final or otherwise terminated; and provided, further, this paragraph shall not apply to records in the possession of an agency that is the subject of the pending investigation or prosecution;

E.  Individual Georgia Uniform Motor Vehicle Accident Reports, except upon the submission of a written statement of need by the requesting party to be provided to the custodian of records and to set forth the need for the report pursuant to the Georgia Open Records Act: provided, however, that any person or entity whose name or identifying information is contained in a Georgia Uniform Motor Vehicle Accident Report shall be entitled, either personally or through a lawyer or other representative, to receive a copy of such report at a cost of $5.00 per report and provided, further, that Georgia Uniform Motor Vehicle Accident Reports shall not be available in bulk for inspection or copying by any person absent a written statement showing the need for each such report pursuant to the requirements of the Georgia Open Records Act. In accordance with the Georgia Open Records Act, the term 'need' means that the natural person or legal entity who is requesting in person or by representative to inspect or copy the Georgia Uniform Vehicle Accident Report:

  1.  Has a personal, professional, or business connection with a party to the accident;

  2.  Owns or leases an interest in property allegedly or actually damaged in the accident;

  3.  Was allegedly or actually injured by the accident;

  4.  Was witness to the accident;

  5.  Is the actual or alleged insurer of a party to the accident or of property actually or allegedly damaged by the accident;

  6.  Is a prosecutor or a publicly employed law enforcement officer;

7.  Is alleged to be liable to another party as a result of the accident;

8.  Is an attorney stating that he or she needs the requested reports as part of a criminal case, or an investigation of a potential claim involving contentions that a roadway, railroad crossing, or intersection is unsafe;

9.  Is gathering information as a representative of a news media organization;

10. Is conducting research in the public interest for such purposes as accident prevention, prevention of injuries or damages in accidents, determination of fault in an accident or accidents, or similar purposes; provided, however, that this subparagraph shall apply only to accident reports on accidents that occurred more than 30 days prior to the request and which shall have the name, street address, telephone number, and driver's license number redacted; or

11. Is a governmental official, entity, or agency, or an authorized agent thereof, requesting reports for the purpose of carrying out governmental functions of legitimate governmental duties;

F.  Records that consist of confidential evaluations submitted to, or examinations prepared by, a governmental agency and prepared in connection with the appointment or hiring of a public officer or employee; and records consisting of material obtained in investigations related to the suspension, firing, or investigation of complaints against public officers or employees until ten (10) days after the same has been presented to the agency or an officer for action or the investigation is otherwise concluded or terminated, provided that this paragraph shall not be interpreted to make such investigator records privileged. Therefore, unless one (1) of these three (3) exceptions applies, Police Department matters will be open for personal inspection by any citizen at a reasonable time and place, and those in charge of such records will not refuse this privilege to any citizen. In determining the confidentiality of department documents, the public's "right to know" must be weighed against the Department's needs to protect the integrity and the confidentiality of its records;

G.  Records concerning public employees or former employees that reveal the public employee's home address, home telephone number, day and month of birth, social security number, insurance or medical information, mother's birth name, credit card information, debit card information, bank account information, account number, utility account number, password used to access his or her account, financial data or information other than compensation by a government agency, unlisted telephone number is so designated in public record, and the identity of the public employee's immediate family members or dependents. This paragraph shall not apply to public records that do not specifically identify public employees or their jobs, titles or offices.

H.  Records that reveal an individual's social security number, mother's birth name, credit card information, debit card information, bank account information, account number utility account number, password to access his or her account, financial data or information, insurance or medical information in all records, unlisted telephone number if so designated in a public record, personal email addresses, cellular telephone numbers, and day and month of birth are exempted and must be redacted before the underlying document is released.

I.  Exhibits tendered to a court in a civil or criminal trial are not open to disclosure without the approval of the court. Where disclosure is allowed, it is done under the circumstances provided for in the law. Where the exhibits relate to criminal charges relating to the sexual exploitation of children, violation of this confidentiality provision is punishable by up to 20 years in jail, a fine of up to $100,000, or both.

Under the Georgia Open Records Act, the name of a complainant must be released unless covered by one (1) of the above exclusions. Requests for information can be submitted to the GovQA portal at Open Records - Gwinnett | Gwinnett County. A copy of the request will be maintained within GovQA.

Additionally, the Department is not required to compile a list or information that is not already in that type of format.

## 307.04  REQUESTS MADE UNDER THE GEORGIA OPEN RECORDS ACT OR SUBPOENA/GENERAL GUIDELINES

Requests for documents under the Open Records Act can be made orally or in writing. Upon receipt of a request the Department shall respond within three (3) business days as provided by law. In any instance where records are unavailable within three (3) business days of receipt of the request, and responsive records exist, the agency shall, within such time period, provide the requester with a description of such records and a timeline for when the records will be available for inspection or copying and provide the responsive records or access thereto as soon as practicable. At the time of inspection, any person may make photographic copies or other electronic reproductions of the records using suitable portable devices brought to the place of inspection. Notwithstanding any other provisions in the Georgia Open Records Act, the agency may, in its discretion, provide copies of a record in lieu of providing access to the record when portions of record contain confidential information that must be redacted.

Requests by civil litigants for records that are sought as part of or for use in any ongoing civil or administrative litigations against the Department shall be made in writing and copied to counsel of record for the agency contemporaneously with their submission to the Department. The Department shall provide, at no cost, duplicate sets of all records produced in response to the request to counsel of record for the Department unless the counsel of record for the Department elects not to receive the records.

As provided in this Georgia Open Records Act, an agency's use of electronic record-keeping systems must not erode the public's right of access to records under this article. Agencies shall produce electronic copies of or, if the requester prefers, printouts of electronic records or data from data base fields that the agency maintains using the computer programs that the agency has in its possession. An agency shall not refuse to produce such electronic records, data, or data fields on the grounds that exporting data or redaction of exempted information will require inputting range, search, filter, report parameters, or similar commands or instructions into an agency's computer system so long as such commands or instructions can be executed using existing computer programs that the agency uses in the ordinary course of business to access, support, or otherwise manage the records or data. A requester may request that electronic records, data, or data fields be produced in the format in which such data or electronic records are kept by the agency, or in a standard export format such as a flat file electronic American Standard Code for Information Interchange (ASCII) format, if the agency's existing computer programs support such an export format. In such instance, the data or electronic records shall be downloaded in such format onto suitable electronic media by the agency.

Requests to inspect or copy electronic messages, whether in the form of email, text message, or other format, should contain information about the messages that is reasonably calculated to allow the recipient of the request to locate the message sought, including, if known, the name, title, office of the specific person or persons whose electronic messages are sought and, to the extent possible, the specific data bases to be searched for messages.

The response to a request may include providing access to the requested documents or if such access is denied in whole or part, the response shall specify in writing the specific legal authority exempting such record or records from disclosure, by Code section, subsection and paragraph. Specific legal authority exempting disclosure includes but is not limited to O.C.G.A. 50-18-72 regarding the Open Records Act; O.C.G.A. 15-11-82 regarding juveniles; O.C.G.A. 16-6-23 regarding the name and identity of any female who may have been raped or upon whom an assault with the intent to commit the offense of rape may have been made; and O.C.G.A. 17-4-20.1 regarding family violence reports.

Generally, there are two (2) types of requests for documents the Department receives. These are either under the Georgia Open Records Act or through a Subpoena for the Production of Evidence.

A. Requests for Documents – Georgia Open Records Act

All Open Records Requests sent to this Department will be coordinated through the Open Records Unit. The Open Records Unit will evaluate the request to determine whether any exceptions may exist to preclude release of the requested information. A copy of the request will be delivered to the supervisor of the area/unit affected by the request. For example, a request for an employee's complaint record would be delivered to the Office of Professional Standards.

In the event an Open Records Request is delivered or mailed to a unit other than the Open Records Unit, the unit supervisor will deliver, without delay, the original request to the Open Records Unit. If the request falls into the supervisor's area of responsibility, they will keep a copy of the request and begin to compile the requested information. If the request is not within the supervisor's area of responsibility, the Open Records Unit will be responsible for forwarding it to the proper unit supervisor. Completed requests will be forwarded to the Open Records Unit as described above.

A record of the amount of time utilized to collect the requested information will be maintained. Records should also be maintained regarding any other expenses associated with completing the request. These expenses include the number of copies made, audio/video tapes, photographs, etc. The Open Records Unit will be responsible for calculating the cost of fulfilling the request and notifying the requesting party.

Under the Georgia Open Records Act there is a three (3) business day limit for producing documents. Criminal penalties are attached for failing to complete the request in a timely manner. All employees must fulfill these requests immediately. If for some reason the request cannot be completed within the allocated time, the Customer Service Associate assigned to the Open Records Unit responsible for addressing the request will provide a reason for the delay, the expected completion date, indication of which records, if any, will be redacted and an estimate of the cost involved.

Fees for the production of documents will be in accordance with the Open Records Act, where applicable. The Open Records Act permits a charge not to exceed $0.10 per page for letter or legal-size documents or, in the case of other documents, the actual cost of producing the copy. In the case of electronic records, the agency may charge the actual cost of the media on which the records or data are produced. Additionally, a charge can be made for the time of the person for search, retrieval, reproducing, and other direct administrative costs of the documents. There is no charge for the first fifteen (15) minutes. The charge shall not exceed the salary of the lowest paid employee who has the skill and training to perform the request. Section/Unit supervisors are responsible for establishing fees for the production of documents, based on the above criteria.

Prior to the release of any documents, the person requesting the documents will be told of the estimated cost to reproduce the documents. The person requesting the documents will normally be requested to pay the estimated amount prior to any documents being produced.

Once the above fee has been collected and the documents produced, the exact cost will be determined. If the cost to produce the documents exceeds the estimated amount, the person will be required to pay the difference. If the estimated amount is higher than the actual cost of producing the documents, the Records Management Section, Open Records Supervisor will inform the County Open Records Officer in the County Law Department, who will complete the refund.

Whenever any person has requested to inspect or copy a public record and does not pay for the cost of search, retrieval, redaction, or copying of such records when such charges have been lawfully estimated and agreed to pursuant to this article, and the agency has incurred the agreed upon costs, regardless of whether the requester inspects or accepts copies of the records, the agency shall be authorized to collect such charges authorized by law for the collection of taxes, fees, or assessments by such agency.

If the estimated costs of producing the records are over $25.00, the agency must notify the requestor within three (3) business days of the request as to the estimated amount. The agency can defer search and retrieval of the records until the requestor agrees to pay the estimated costs, unless the requestor has stated his or her willingness to pay an amount that exceeds the search and retrieval costs. In any instance in which the estimated costs for production of the records exceeds $500.00, the agency may insist on prepayment of the costs prior to beginning search, retrieval, review, or production of the records. Whenever any person who has requested to inspect or copy public records has not paid the associated costs, the agency may require prepayment for compliance with all future requests for production of records from that person until the costs for the prior production of records have been paid or the dispute regarding payment resolved.

B.  Requests for Documents – Subpoena

When a Subpoena for the Production of Evidence is received, it is the responsibility of the employee that the subpoena is addressed to respond to it. For example, if an officer receives a subpoena to produce a recording of a DUI arrest, they have made, that officer is responsible for producing the recording in court.

However, an individual employee cannot produce something they are not responsible for. For example, in the same situation described above, if the officer received a subpoena for the recording of a DUI arrest, they had made and a list of all persons the Department has arrested for DUI over the past month, the officer would only be able to produce the recording, as they are not responsible for maintaining a list of persons arrested for DUI.

Any time there is a question concerning either an Open Records Request or a Subpoena for the Production of Evidence, it should be directed to the supervisor of the Open Records Unit. Individual members of the Department should not contact the Gwinnett County Law Department concerning an Open Records Request or Subpoena for the Production of Evidence. All requests for legal assistance will be routed through the Office of the Chief.

## 307.05  POLICE DEPARTMENT DOCUMENTS/OPEN RECORDS REQUESTS

A.  Police Incident Reports (with or without an arrest)

A Police Incident Report is the first report created to document an incident or an arrest.  It generally contains information relating to time and place of incident, victim, witness, and suspect information. Additionally, the document contains a brief narrative of what happened.

These reports are typically a matter of public record and are available to any citizen at the Police Department's Records Unit for a copying charge. Citizens who desire these reports will be required to provide sufficient information so as to locate the report.

Exceptions:

Family Violence Incident Reports (No Arrest) – Incident reports that are entitled "Family Violence" or "Domestic Violence" where no arrest has been made are not Public Records for the purposes of the Georgia Open Records Act (see O.C.G.A. 17-4-20.1(d)) and will not be released to the general public. The victim and offender may request and receive a copy of the report.

Family Violence Incident/Arrest Reports (Arrest) – Incident reports and arrest reports that are entitled "Family Violence" or "Domestic Violence" where an arrest has been made are a matter of public record and will be made available to any citizen requesting it.

Requests for this type of report should be directed to the supervisor of the Open Records Unit. Reports may be obtained at any police precinct, headquarters, or can be submitted to the GovQA portal at Open Records - Gwinnett | Gwinnett County.

B.  Traffic Accident Reports

Traffic Accident Reports are documents created by police officers documenting traffic accident investigations. There are two (2) types of Traffic Accident Reports: accidents occurring on state or county roadways and accidents occurring on private property. Individual Georgia Uniform Motor Vehicle Accident Reports, except upon the submission of a written statement of need by the requesting Party are not public record.

Requests for this type of report should be directed to the Records Management Unit. Requests for Traffic Accident reports should be in writing utilizing the Accident Request Form. Reports may be obtained at any police precinct, headquarters, or buycrash.com.

C.  Supplemental Reports

A supplemental report is a document created by an officer or investigator describing events or actions that have occurred following the initial police investigation, or information that is sensitive or confidential in nature that should not be released with the initial incident report. This may include statements, lab test requests or results, investigator reports, etc.

A supplemental report made pursuant to a criminal investigation that is still pending is not a matter of public record and is confidential. The supplemental report may be released upon expressed approval by the investigator or their superiors. This release approval must be made pursuant to valid law enforcement duties and restrictions.

A report is still pending if it falls into any of the following categories:

*   Active – An active investigation is ongoing or will commence once further information is received.

*   Cleared Arrest – An arrest has been made in the case; however, other arrests may still be pending.

A supplemental report made pursuant to a criminal investigation that is closed or other non-criminal investigation supplemental is a matter of public record and should be available to any citizen upon request.

A report is closed if it falls into any of the following categories:

*   Unfounded – A report was taken alleging a specific crime; however, upon investigation, it was found that no crime occurred.

*   Ex-Cleared – A report was taken alleging a specific crime; however, upon investigation, it was found that the case is not prosecutable.

*   Cleared Arrest – Prosecution closed.

There may be other situations where the entire file or portions of the file will remain confidential. If a request is made to produce a copy of an investigative file and the employee is unsure whether the file or portions of the file are confidential, they should immediately consult with their immediate supervisor or personnel in the Office of the Chief.

Requests for this type of document should be directed to the Office of the Chief.

D.  Animal Welfare and Enforcement Reports

Initial incident reports written by Animal Welfare and Enforcement personnel are public record and available for production. These are available at the Animal Welfare and Enforcement facility. Other records may be available, however, exceptions include but are not limited to:

1.  Veterinarian records and similar files, the disclosure of which would be an invasion of personal privacy;

2.  Records of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity.

Requests for this type of document should be directed to the Animal Welfare and Enforcement Section.

E.  Criminal History and Driver's History files (GCIC & NCIC Records)

Generally, these files are not a matter of public record, and state and Federal laws governing the security and privacy of criminal justice information systems require that access and dissemination of Criminal History information and Driver's History information be restricted to authorized persons.

It should be noted that O.C.G.A. 35-3-38 provides that anyone who "knowingly" or "negligently" releases or allows information to pass to unauthorized person is guilty of a felony. Violations of this policy will result not only in severe disciplinary action, up to and including termination, but also may result in criminal prosecution.

Requests for this type of document/information should be directed to the Office of the Chief.

F.   Wanted Checks

These files are not a matter of public record and are prohibited from being disseminated by State and Federal laws. This information is restricted to authorized personnel only.

Requests for this type of document/information should be directed to the Office of the Chief.

G.   Employee Personnel Files/Training Files

These files are generally a matter of public record and are available to citizens upon request.

Exceptions:

Training records that are confidential and are prepared in connection to the appointment or hiring of police personnel are not matters of public record and will not be released to the general public. Examples of such records would be tests used in evaluating the knowledge of subject matter taught by staff at the training academy. (See O.C.G.A. 50-18-72 (a) (5))

Requests for this type of document/information should be directed to the Open Records Unit.

H.   Internal Affairs Files

These files are generally a matter of public record and are available to citizens upon request.

Exceptions:

Internal Affairs investigations that are ongoing or have been closed for less than 10 business days.

Requests for this type of document/information should be directed to Open Records Unit.

I.   Confidential File

These files contain pre-employment information/documents, medical records, and other documents that are considered confidential. These documents are not generally a matter of public record and will only be released at the discretion of the Office of the Chief.

J.   Photographs

Any photographs taken by Departmental personnel concerning any police-related incident; i.e., crime scenes, fires, traffic accidents, etc., are a matter of public record and available to the public for a copying fee.

Exceptions:

Photographs made pursuant to a criminal investigation that is still pending is not a matter of public record and is confidential. The photograph may be released upon expressed approval by the investigator or their superiors. This release approval must be made pursuant to valid law enforcement duties and restrictions. Requests for this type of document/information should be directed to the Office of the Chief.

Autopsy photographs shall not be subject to disclosure pursuant to Article 4 of Chapter 18 of Title 50; provided, however, that this subsection shall have no application to the disclosure of such photographs to law enforcement agencies and prosecutors for law enforcement purposes or, in closed criminal investigations, to medical schools, medical facilities, and physicians for medical purposes; to individuals who have secured a written release from the deceased's next-of-kin; or to the next-of-kin. It shall be the responsibility of the next-of-kin to show proof of the familial relationship.

Crime scene photographs and video recordings, including photographs and video recordings created or produced by a state or local agency or by a perpetrator or suspect at a crime scene, which depict or describe a deceased person in a state of dismemberment, decapitation, or similar mutilation including, without limitation, where the deceased person's genitalia are exposed, shall not be subject to disclosure pursuant to Article 4 of Chapter 18 of Title 50; provided, however, that this

subsection shall not prohibit disclosure of such material to the deceased's next-of-kin or to an individual who has secured a written release from the next-of-kin. It shall be the responsibility of the next-of-kin to show proof of the familial relationship.

A superior court may, in closed criminal investigations, order the disclosure of such photographs upon findings in writing that disclosure is in the public interest and that it outweighs any privacy interest that may be asserted by the deceased's next-of-kin. In any such action, the court shall review the photographs in question in camera and may condition any disclosure on such measures as the court may deem necessary to accommodate the interests of the parties before it.

Prior to releasing any crime scene material described in this subsection, the custodian of such material shall give the deceased person's next-of-kin at least two (2) week notice. No court shall order a disclosure pursuant to this subsection which would disregard or shorten the duration of such notice requirement.

K.   911/Citizens Calls through Communications

Computer printouts and tapes of all incoming calls through Communications for assistance is a matter of public record, pursuant to Georgia Open Records Law O.C.G.A. 50-18-72(a)(26), and available to the public for a copying fee.

Exceptions:

If it is necessary to prevent the disclosure of the identity of a confidential source;
If it is necessary to prevent the disclosure of info that would endanger the life or safety of someone; or
to prevent disclosure of the existence of a surveillance or investigation.

The call may be released upon expressed approval by the investigator or their superiors.  This release approval must be made pursuant to valid law enforcement duties and restrictions.

L.   Inter-Departmental or Intra-Departmental Documentation, Memorandums or Correspondence

These documents are a public record and are available to the public for a copying fee.

Exceptions:

Documents considered confidential and marked as such are not a public record and, as such, are not available to the general public. For a document to be considered confidential, it must meet the criteria established in GDM 307.03.

Requests for this type of document/information should be directed to the Office of the Chief.

M.   General Orders, Personnel Orders, Special Orders, Policy or Procedure Memorandums to all Police Department Personnel.

These documents are a matter of public record and available to the public for a copying fee.

Requests for this type of document/information should be directed to the Open Records Unit.

## 307.06   RELEASE OF CONFIDENTIAL INFORMATION PROHIBITED

Any employee of the Department who, during the course of their employment, obtains information which is considered confidential by Department policy or local, state or federal law, will not disclose or sell such confidential information that is prohibited by policy or law; i.e., First Offender Act, medical information, including AIDS information, GCIC information, etc.

Any employee who is unsure whether a Police Department document or record is a matter of public record or is confidential will treat the document as confidential and immediately inquire through the chain of command as to the confidentiality of that particular document.

## 307.07   JUVENILE OFFENDERS

Juvenile offender incident/arrest reports are generally exempted from public disclosure by O.C.G.A. 15-11-702 and 15-11-708. Incident Reports with an arrest of a juvenile offender charged with the following crimes are a matter of public record and will be made available to any citizen - provided the juvenile offender has been previously adjudicated.

- Murder (16-5-1)
- Voluntary manslaughter (16-5-2)
- Rape (16-6-1)

- Aggravated sodomy (16-6-2)

- Aggravated child molestation (16-6-4)

- Aggravated sexual battery (16-6-22.2)

- Armed robbery, if committed with a firearm

Other crimes in which a report involving a juvenile offender may be a matter of public record are as follows:

A. An act which constitutes a second or subsequent offense under O.C.G.A. 16-11-132 (b) (Possession of a pistol or revolver by person under the age of 18) if committed by a person 13 to 17 years of age

B. Kidnapping or arson in the first degree, if done by a juvenile 13 or more years of age

C. Aggravated assault, arson in the second degree, aggravated battery, robbery, armed robbery not involving a firearm, or battery, in violation of O.C.G.A. 16-5-23.1 (Battery) if the victim is a teacher or other school personnel, if done by a juvenile 13 or more years of age

D. Attempted murder or attempted kidnapping, if done by a juvenile 13 or more years of age

E. The carrying or possession of a weapon in violation of O.C.G.A. 16-11-127.1 (b) (Carrying or possessing weapons on school property or at school functions)

F. Hijacking a motor vehicle, if done by a juvenile 13 or more years of age

G. Any violation of O.C.G.A. 16-7-82 (Destructive devices), O.C.G.A. 16-7-84 (Distribution of {Destructive} device to minor), or O.C.G.A. 16-7-86 Attempt or conspiracy {Destructive device} if done by adult, would have been felonies

H. Any other act which, if done by an adult, would be a felony, if the juvenile committing the act has three times previously been adjudicated delinquent for acts which, if done by an adult, would have been felonies

I. Any violation of O.C.G.A. 16-13-31, relating to trafficking in cocaine, illegal drugs, marijuana, or methamphetamine

J. Any Criminal violation of O.C.G.A. 16-14-4, relating to racketeering.

K. Any violation of O.C.G.A. 16-10-52, relating to escape, if the juvenile involved in the commission of such act has been previously adjudicated to have committed a designated felony

L. Constitutes a second or subsequent adjudication of delinquency based upon a violation of O.C.G.A. 16-7-85 (Hoax {Destructive} devices) or O.C.G.A. 16-7-87 (Obstruction of safety officials {EOD, etc.})

M. Constitutes a second or subsequent violation of O.C.G.A. 16-8-2 through 16-8-9 relating to theft, if the property which was the subject of the theft was a motor vehicle

In any case where a previous conviction is required prior to releasing information, the employee should forward the request for documents to the Open Records Unit for dissemination.

There are other circumstances where a juvenile offender's information may be released following a juvenile court hearing. If any doubt exists, the name of the juvenile offender should not be released, and the employee should seek further instruction via the chain of command.

## 307.08   RELEASE OF EMPLOYEE'S NAMES/ADDRESSES

It is the policy of this Department to cooperate with members of the news media in matters of public interest or concern. Media representatives will not be restricted from access to information as outlined in this policy listed in this section.

However, there are times when the security of the investigative information must be closely guarded to prevent jeopardizing the investigation or harming any individual. A specific example of this is in situations where departmental personnel are involved in the death or serious injury of a citizen.

Department regulations require that employees involved in such situations be available at all times to investigative personnel and undergo psychological debriefings. In such a stressful situation, the release of the employee's identity to the media only adds to the stress of the employee and their families, and also hinders the investigation.

In such situations, the Department's need to conduct a complete and timely investigation must outweigh the media's right to certain information. The names of those employees involved in these situations will be considered restricted information until the investigation is complete. Only the Public Information Officer will release the name of any employee involved in incidents involving serious injury or death and then only with the approval of the Chief of Police.

The home address and/or telephone number of any employee will not be released to a member of the public or media. Any request for this type of information made under the Open Records Act or subpoena will be forwarded to the Office of the Chief. This is not intended to prohibit the release of this information to other law enforcement personnel or prosecutors who have a legitimate need for the information.



**NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**
**WITHOUT PREJUDICE – ALL RIGHTS RESERVED – UCC 1-308**
**Date:** July 11, 2025
**From:** Michael-R.: Marshall, Beneficiary/Executor
In re: MICHAEL R. MARSHALL/ MICHAEL RODRIQUEZ MARSHALL/ (DBA / Trust / LLC)

To:

- Officer Jaeger (Badge #B2517)
- Officer Abram (Badge #B2416)
- Officer Stevers (Badge #B1570)
- Gwinnett County Police Department – Legal Affairs
- Gwinnett County Attorney
- Clerk of State Court, Gwinnett County

## SUBJECT: Pending §1983 Action for Civil Rights Violations on November 6, 2023

I am placing you and your offices on formal notice that I intend to file a **federal civil rights lawsuit** in the **U.S. District Court for the Northern District of Georgia** for actions arising from an unlawful arrest and detention that occurred on **November 6, 2023**, involving multiple violations of the **Fourth, Fifth, Sixth, and Fourteenth Amendments** to the United States Constitution.

## INCIDENT OVERVIEW

On November 6, 2023, I was stopped without probable cause or a traffic violation. I was:

- Arrested without a warrant,
- Removed from my automobile under **threat, duress, and coercion**,
- Transported in a dangerous and psychologically abusive manner,
- Seized of my private property (cell phone) without a warrant,
- Not read Miranda rights,
- And have never been arraigned or formally notified of charges to this day — nearly two years later.

## INVOLVED OFFICERS

- Officer **Jaeger**, Badge #B2517 – Initial stop, threats, and seizure
- Officer **Abram**, Badge #B2416 – Assisted in extraction
- Officer **Stevers**, Badge #B1570 – Approved arrest

## CLAIMED VIOLATIONS

This incident constitutes violations of my rights under:

- **Fourth Amendment** – unlawful seizure and search of person and effects
- **Fifth Amendment** – due process violation and coercion
- **Sixth Amendment** – denial of a speedy trial (no arraignment to date)
- **Fourteenth Amendment** – equal protection and due process
- **Riley v. California (2014)** – unlawful warrantless seizure of mobile phone
- **Georgia Constitution, Art. I, Sec. I, Para. I, II, XIII**

Additional claims may include:

- **Intentional infliction of emotional distress**
- **False arrest and imprisonment**
- **Commercial trespass upon private trust and LLC NAME** without verified complaint

## DEMAND

This letter serves as a **final administrative notice**. If no lawful remedy, dismissal, or negotiated settlement is initiated within **30 days**, I will proceed to file a §1983 lawsuit in U.S. District Court and name:

- The individual officers **personally and in their official capacity**
- Gwinnett County, and
- **Gwinnett County Police Department** and its agents under **Monell liability**.

All rights are reserved. This Notice is not a motion or plea but a lawful declaration of standing.

Sincerely,
**Michael-R.: Marshall**
c/o 349 Clearsprings Dr.
Lawrenceville Ga. 30046

By: _Michael R. Marshall_

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of **this NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**

was served upon:

1.  **(Officer Stevers – Badge # B1570)**
    **Gwinnett County Police Department**
    770 Hi Hope Rd.
    Lawrenceville Georgia 30043
    Date: July 11, 2025

By: Michael: Marshall

By: Michl. Mashll

## NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983

**WITHOUT PREJUDICE – ALL RIGHTS RESERVED – UCC 1-308**

**Date:** July 11, 2025

**From:** Michael-R.: Marshall, Beneficiary/Executor

In re: MICHAEL R. MARSHALL/ MICHAEL RODRIQUEZ MARSHALL/ (DBA / Trust / LLC)

To:

- Officer Jaeger (Badge #B2517)
- Officer Abram (Badge #B2416)
- Officer Stevers (Badge #B1570)
- Gwinnett County Police Department – Legal Affairs
- Gwinnett County Attorney
- Clerk of State Court, Gwinnett County

## SUBJECT: Pending §1983 Action for Civil Rights Violations on November 6, 2023

I am placing you and your offices on formal notice that I intend to file a **federal civil rights lawsuit** in the **U.S. District Court for the Northern District of Georgia** for actions arising from an unlawful arrest and detention that occurred on **November 6, 2023**, involving multiple violations of the **Fourth, Fifth, Sixth, and Fourteenth Amendments** to the United States Constitution.

## INCIDENT OVERVIEW

On November 6, 2023, I was stopped without probable cause or a traffic violation. I was:

- Arrested without a warrant,
- Removed from my automobile under **threat, duress, and coercion**,
- Transported in a dangerous and psychologically abusive manner,
- Seized of my private property (cell phone) without a warrant,
- Not read Miranda rights,
- And have never been arraigned or formally notified of charges to this day — nearly two years later.

## INVOLVED OFFICERS

- Officer **Jaeger**, Badge #B2517 – Initial stop, threats, and seizure
- Officer **Abram**, Badge #B2416 – Assisted in extraction
- Officer **Stevers**, Badge #B1570 – Approved arrest

## CLAIMED VIOLATIONS

This incident constitutes violations of my rights under:

- **Fourth Amendment** – unlawful seizure and search of person and effects
- **Fifth Amendment** – due process violation and coercion
- **Sixth Amendment** – denial of a speedy trial (no arraignment to date)
- **Fourteenth Amendment** – equal protection and due process
- **Riley v. California (2014)** – unlawful warrantless seizure of mobile phone
- **Georgia Constitution, Art. I, Sec. I, Para. I, II, XIII**

Additional claims may include:

- **Intentional infliction of emotional distress**
- **False arrest and imprisonment**
- **Commercial trespass upon private trust and LLC NAME** without verified complaint

## DEMAND

This letter serves as a **final administrative notice**. If no lawful remedy, dismissal, or negotiated settlement is initiated within **30 days**, I will proceed to file a §1983 lawsuit in U.S. District Court and name:

- The individual officers **personally and in their official capacity**
- Gwinnett County, and
- **Gwinnett County Police Department** and its agents under **Monell liability**.

All rights are reserved. This Notice is not a motion or plea but a lawful declaration of standing.

Sincerely,
**Michael-R.: Marshall**
c/o 349 Clearsprings Dr.
Lawrenceville Ga. 30046

By: _Mich P. Marshell_

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **this NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**

was served upon:

1. **(Officer Abram – Badge # B2416)**
   **Gwinnett County Police Department**
   770 Hi Hope Rd.
   Lawrenceville Georgia 30043
   Date: July 11, 2025

By: Michael: Marshall

By: Mich C Marshall

**NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**
**WITHOUT PREJUDICE – ALL RIGHTS RESERVED – UCC 1-308**
**Date:** July 11, 2025
**From:** Michael-R.: Marshall, Beneficiary/Executor
In re: MICHAEL R. MARSHALL/ MICHAEL RODRIQUEZ MARSHALL/ (DBA / Trust / LLC)

To:

- Officer Jaeger (Badge #B2517)
- Officer Abram (Badge #B2416)
- Officer Stevers (Badge #B1570)
- Gwinnett County Police Department – Legal Affairs
- Gwinnett County Attorney
- Clerk of State Court, Gwinnett County

## SUBJECT: Pending §1983 Action for Civil Rights Violations on November 6, 2023

I am placing you and your offices on formal notice that I intend to file a **federal civil rights lawsuit** in the **U.S. District Court for the Northern District of Georgia** for actions arising from an unlawful arrest and detention that occurred on **November 6, 2023**, involving multiple violations of the **Fourth, Fifth, Sixth, and Fourteenth Amendments** to the United States Constitution.

## INCIDENT OVERVIEW

On November 6, 2023, I was stopped without probable cause or a traffic violation. I was:

- Arrested without a warrant,
- Removed from my automobile under **threat, duress, and coercion**,
- Transported in a dangerous and psychologically abusive manner,
- Seized of my private property (cell phone) without a warrant,
- Not read Miranda rights,
- And have never been arraigned or formally notified of charges to this day — nearly two years later.

## INVOLVED OFFICERS

- Officer **Jaeger**, Badge #B2517 – Initial stop, threats, and seizure
- Officer **Abram**, Badge #B2416 – Assisted in extraction
- Officer **Stevers**, Badge #B1570 – Approved arrest

## CLAIMED VIOLATIONS

This incident constitutes violations of my rights under:

- **Fourth Amendment** – unlawful seizure and search of person and effects
- **Fifth Amendment** – due process violation and coercion
- **Sixth Amendment** – denial of a speedy trial (no arraignment to date)
- **Fourteenth Amendment** – equal protection and due process
- **Riley v. California (2014)** – unlawful warrantless seizure of mobile phone
- **Georgia Constitution, Art. I, Sec. I, Para. I, II, XIII**

Additional claims may include:

- **Intentional infliction of emotional distress**
- **False arrest and imprisonment**
- **Commercial trespass upon private trust and LLC NAME** without verified complaint

## DEMAND

This letter serves as a **final administrative notice**. If no lawful remedy, dismissal, or negotiated settlement is initiated within **30 days**, I will proceed to file a §1983 lawsuit in U.S. District Court and name:

- The individual officers **personally and in their official capacity**
- Gwinnett County, and
- **Gwinnett County Police Department** and its agents under **Monell liability**.

All rights are reserved. This Notice is not a motion or plea but a lawful declaration of standing.

Sincerely,
**Michael-R.: Marshall**
c/o 349 Clearsprings Dr.
Lawrenceville Ga. 30046

By: _Michael R. Marshall_

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **this NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**

was served upon:

1. Gwinnett County Attorney
   75 Langley Drive
   Lawrenceville Georgia 30046
   Email:
   Date: July 11, 2025

By: Michael: Marshall

**NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER 42 U.S.C. § 1983**
**WITHOUT PREJUDICE – ALL RIGHTS RESERVED – UCC 1-308**
**Date:** July 11, 2025
**From:** Michael-R.: Marshall, Beneficiary/Executor
In re: MICHAEL R. MARSHALL/ MICHAEL RODRIQUEZ MARSHALL/ (DBA / Trust / LLC)

To:

- Officer Jaeger (Badge #B2517)
- Officer Abram (Badge #B2416)
- Officer Stevers (Badge #B1570)
- Gwinnett County Police Department – Legal Affairs
- Gwinnett County Attorney
- Clerk of State Court, Gwinnett County

## SUBJECT: Pending §1983 Action for Civil Rights Violations on November 6, 2023

I am placing you and your offices on formal notice that I intend to file a **federal civil rights lawsuit** in the **U.S. District Court for the Northern District of Georgia** for actions arising from an unlawful arrest and detention that occurred on **November 6, 2023**, involving multiple violations of the **Fourth, Fifth, Sixth, and Fourteenth Amendments** to the United States Constitution.

## INCIDENT OVERVIEW

On November 6, 2023, I was stopped without probable cause or a traffic violation. I was:

- Arrested without a warrant,
- Removed from my automobile under **threat, duress, and coercion**,
- Transported in a dangerous and psychologically abusive manner,
- Seized of my private property (cell phone) without a warrant,
- Not read Miranda rights,
- And have never been arraigned or formally notified of charges to this day — nearly two years later.

## INVOLVED OFFICERS

- Officer **Jaeger**, Badge #B2517 – Initial stop, threats, and seizure
- Officer **Abram**, Badge #B2416 – Assisted in extraction
- Officer **Stevers**, Badge #B1570 – Approved arrest

## CLAIMED VIOLATIONS

This incident constitutes violations of my rights under:

- **Fourth Amendment** – unlawful seizure and search of person and effects
- **Fifth Amendment** – due process violation and coercion
- **Sixth Amendment** – denial of a speedy trial (no arraignment to date)
- **Fourteenth Amendment** – equal protection and due process
- **Riley v. California (2014)** – unlawful warrantless seizure of mobile phone
- **Georgia Constitution, Art. I, Sec. I, Para. I, II, XIII**

Additional claims may include:

- **Intentional infliction of emotional distress**
- **False arrest and imprisonment**
- **Commercial trespass upon private trust and LLC NAME** without verified complaint

## DEMAND

This letter serves as a **final administrative notice**. If no lawful remedy, dismissal, or negotiated settlement is initiated within **30 days**, I will proceed to file a §1983 lawsuit in U.S. District Court and name:

- The individual officers **personally and in their official capacity**
- Gwinnett County, and
- **Gwinnett County Police Department** and its agents under **Monell liability**.

All rights are reserved. This Notice is not a motion or plea but a lawful declaration of standing.

Sincerely,
**Michael-R.: Marshall**
c/o 349 Clearsprings Dr.
Lawrenceville Ga. 30046

By: _Michael C. Marshall_

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of **this NOTICE OF INTENT TO FILE FEDERAL CIVIL RIGHTS LAWSUIT UNDER <u>42 U.S.C. § 1983</u>**

was served upon:

1. **(Officer Stevers – Badge # B1570)**
   **Gwinnett County Police Department**
   770 Hi Hope Rd.
   Lawrenceville Georgia 30043
   Date: July 11, 2025

By: Michael: Marshall

By: Michl. Marshll

**Return Receipt 1 (top left)**

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Officer Jaeger - Badge # B2517
Gwinnett County Police Department
770 Hi Hope Rd.
Lawrenceville, Ga. 30043

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _SA Clark #1136_  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*  C. Date of Delivery
SA Clark #1136

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9402 9006 4122 8786 10

2. Article Number *(Transfer from service label)*
9589 0710 5270 3071 3221 46

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

---

**Return Receipt 2 (top right)**

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Officer Abram - Badge # B2416
Gwinnett County Police Department
770 Hi Hope Rd.
Lawrenceville, Ga. 30043

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _SA Clark #11_

B. Received by *(Printed Name)*
SA Clark

D. Is delivery address different from item 1?
If YES, enter delivery address below:

9590 9402 9006 4122 8786 27

2. Article Number *(Transfer from service label)*
9589 0710 5270 3071 3221 39

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domes

---

**Return Receipt 3 (bottom left)**

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Officer Stevens - Badge # B1570
Gwinnett County Police Department
770 Hi Hope Rd.
Lawrenceville, Ga. 30043

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _SA Clark 1136_  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*  C. Date of Delivery
SA Clark

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9402 9006 4122 8786 41

2. Article Number *(Transfer from service label)*
9589 0710 5270 3071 3221 15

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

---

**Return Receipt 4 (bottom right)**

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gwinnett County Attorney
75 Langley Dr.
Lawrenceville, Ga. 30046

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X

B. Received by *(Printed Name)*

D. Is delivery address different from item 1?
If YES, enter delivery address below:
Gwinnett County

JUL 1 8 2025

Mail Services

9590 9402 9006 4122 8786 58

2. Article Number *(Transfer from service label)*
9589 0710 5270 3071 3221 08

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Do

Exhibit G

[Records Center] Public Records Request :: R209650-021125

From:  Gwinnett County Open Records (gwinnettcountyga@govqa.us)
To:    marshallmichael80@yahoo.com
Date:  Friday, February 14, 2025 at 08:11 AM EST

--- Please respond above this line ---

 **Gwinnett**

GWINNETT COUNTY
OPEN RECORDS OFFICE
75 Langley Drive | Lawrenceville, GA 30046-6935
(O) 770.822.8700 | (F) 770.822.8790
www.gwinnettcounty.com

RE: OPEN RECORDS REQUEST of February 11, 2025., Reference # R209650-021125.

Dear Michael Marshall,

Gwinnett County received an open records request from you on February 11, 2025. Your request mentioned:

**"This public record request is being made to obtain a copy of all bodycam footage of all officers present on the night of 11/07/2023. when Michael R. Marshall was arrested at or around 12:44 AM. This request is being made to obtain all video, audio, and bodycam footage from Officer Alexander Jaeger Badge #2517, and all Officers who assisted Officer Alexander Jaeger Badge # 2517 in the arrest of Michael R. Marshall on said date and time."**

Gwinnett County has reviewed your request and has determined that the records requested are exempt from disclosure under the Georgia Open Records Act for the following reasons:

O.C.G.A. § 50-18-72(a)(4)-Records of law enforcement, prosecution, or regulatory agencies in **any pending investigation or prosecution** of criminal or unlawful activity, **other than initial police arrest reports and initial incident reports.**

If you have any questions or need additional information, please feel free to contact my office at 770 513 5272.

Sincerely,

**Angela Starks**
**Customer Service Associate III**
**Police**

To monitor the progress or update this request please log into the Open Records Center

Exhibit H

**Concise Officer History**

**PO Sr Alexander Sydney Jaeger [2517]**

Employee ID #: 92461  Hire date: Jun 27, 2022
Current assignment(s):
  Division: Operation Bureau/Uniform
  Precinct: Central Precinct
  Section/Unit:

---

**Involved Officer: Use of force**           IA No:  23C-244            **Received: Aug 15, 2023**
                                             Case/CAD #:  GP230061758


Use(s) of force          Effective/Not Effective
Physical Compulsion      Effective

Service being conducted: Domestic

---

**Involved Officer: Vehicle accident**       IA No:  23F-125            **Received: Oct 06, 2023**
                                             Case/CAD #:  GP230038340


Allegations:

   Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - Not At Fault - Oct 06, 2023

---

**Involved Officer: Use of force**           IA No:  23C-404            **Received: Dec 09, 2023 20:43**
                                             Case/CAD #:  GP2300948326


Use(s) of force          Effective/Not Effective
Physical Compulsion      Effective

Service being conducted: Assault/Battery

---

**Involved Officer: Use of force**           IA No:  24C-118            **Received: May 28, 2024**
                                             Case/CAD #:  GP240034502


Use(s) of force          Effective/Not Effective
TASER T7                 Effective

Service being conducted: Disorderly/Fight/Obstruc

---

**Involved Officer: Vehicle accident**       IA No:  24F-104            **Received: Jun 28, 2024**


Allegations:

   Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - At Fault - May 22, 2024

Actions taken:

   : May 22, 2024 - Written Reprimand   Days/hrs suspended: 0

---

**Involved Officer: Use of force**           IA No:  24C-385            **Received: Dec 31, 2024**
                                             Case/CAD #:  GP240092385


Use(s) of force          Effective/Not Effective
Physical Compulsion Soft Effective

Service being conducted: Disorderly/Fight/Obstruc

---

**Involved Officer: Use of force**           IA No:  25C-099            **Received: May 13, 2025**
                                             Case/CAD #:  GP250028681


Use(s) of force          Effective/Not Effective
TASER T7                 Effective

Service being conducted: Traffic Stop

---

Report summary: totals by incident type:

| Incident type | Received |
|---|---|
| Administrative (A) | 0 |
| Administrative Review (AR) | 0 |
| Citizen (B) | 0 |
| Discretionary arrest | 0 |
| Drug test | 0 |
| Forced entry | 0 |
| Integrity test | 0 |
| K9 Utilization | 0 |
| Stop | 0 |
| Use of force | 5 |
| Vehicle accident | 2 |
| Vehicle pursuit | 0 |
| Vehicle: Property Damage | 0 |
| **Total** | **7** |

Concise Officer History

PO Master Nicholas Raven Abram [2416]

Employee ID #: 91295  Hire date: Oct 04, 2021
Current assignment(s):
    Division: Operation Bureau/Uniform
    Precinct: Central Precinct
    Section/Unit:

**Involved Officer: Use of force**          IA No: 22C-227          **Received: Jan 05, 2023**
                                            Case/CAD #:  GP220103672


    Use(s) of force          Effective/Not Effective
    Physical Compulsion      Effective

    Service being conducted: Arrest Warrant


**Involved Officer: Vehicle accident**      IA No: 23F-059          **Received: Feb 20, 2023**


    Allegations:

        Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - Not At Fault - Jun 16, 2023

**Involved Officer: Vehicle accident**      IA No: 23F-060          **Received: Feb 24, 2023**


    Allegations:

        Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - Not At Fault - Jun 16, 2023

**Involved Officer: Use of force**          IA No: 23C-202          **Received: Jul 12, 2023**
                                            Case/CAD #:  GP230053761


    Use(s) of force          Effective/Not Effective
    TASER X2                 Not Effective

    Service being conducted: Disorderly/Fight/Obstruc


**Involved Officer: Use of force**          IA No: 23C-257          **Received: Aug 23, 2023**
                                            Case/CAD #:  GP230065406


    Use(s) of force          Effective/Not Effective
    TASER X2                 Effective

    Service being conducted: Theft All


**Involved Officer: Vehicle accident**      IA No: 23F-271          **Received: Apr 09, 2024**
                                            Case/CAD #:  GP230094553


    Allegations:

        Vehicle Accident - 202.02 Duty To Abllde by All Laws and Orders - At Fault - Jan 24, 2024

    Actions taken:

      : Mar 08, 2024 - Written Reprimand   Days/hrs suspended: 0


**Involved Officer: Vehicle accident**      IA No: 24F-206          **Received: Oct 04, 2024**


    Allegations:

        Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - Not At Fault - Sep 25, 2024

**Involved Officer: Vehicle accident**      IA No: 24F-230          **Received: Nov 25, 2024**


    Allegations:

        Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - At Fault - Nov 25, 2024

    Actions taken:

      : Sep 25, 2024 - No Action Taken   Days/hrs suspended: 0


**Involved Officer: Vehicle accident**      IA No: 24F-290          **Received: Dec 31, 2024**


    Allegations:

        Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - At Fault - Dec 17, 2024

    Actions taken:

      : Dec 17, 2024 - Suspension   Days/hrs suspended: 2

          2 day suspension.

      : Dec 17, 2024 - Loss Of Take Home Vehicle   Days/hrs suspended: 6

6 day loss of take home vehicle.

Report summary: totals by incident type:

| Incident type | Received |
|---|---|
| Administrative (A) | 0 |
| Administrative Review (AR) | 0 |
| Citizen (B) | 0 |
| Discretionary arrest | 0 |
| Drug test | 0 |
| Forced entry | 0 |
| Integrity test | 0 |
| K9 Utilization | 0 |
| Stop | 0 |
| Use of force | 3 |
| Vehicle accident | 6 |
| Vehicle pursuit | 0 |
| Vehicle: Property Damage | 0 |
| **Total** | **9** |

Printed: Jul 24, 2025 08:36   By: PO Master Terrell Cochran

Concise Officer History

Sergeant Tyler C Stevens [1570]

Employee ID #: 75444  Hire date: Jun 09, 2012
Current assignment(s):
    Division: Operation Bureau/Uniform
    Precinct: Central Precinct
    Section/Unit: Precinct Community Response Team

**Involved Officer: Use of force**          IA No:  14C-002          **Received: Jan 10, 2014**
                                            Case/CAD #:  14-003101


    Use(s) of force          Effective/Not Effective
    Physical Compulsion      Effective
    Physical Compulsion      Effective

    Service being conducted: Other

**Involved Officer: Use of force**          IA No:  14C-256          **Received: Dec 13, 2014**
                                            Case/CAD #:  14-111487


    Use(s) of force          Effective/Not Effective
    TASER X2                 Effective

    Service being conducted: Assault/Battery

**Involved Officer: Vehicle accident**       IA No:  14F-251          **Received: Dec 31, 2014**
                                            Case/CAD #:  14-116006


    Allegations:

        Laws and Orders - 202.02 Duty To Abide by All Laws and Orders - At Fault - Feb 17, 2015

    Actions taken:

        : Feb 17, 2015 - Written Reprimand   Days/hrs suspended: 0


**Involved Officer: Use of force**          IA No:  15C-026          **Received: Feb 18, 2015**
                                            Case/CAD #:  15-015453


    Use(s) of force          Effective/Not Effective
    TASER X2                 Not Effective
    Physical Compulsion      Effective

    Service being conducted: Felony Obstruction

**Involved Officer: Use of force**          IA No:  15C-124          **Received: Jul 13, 2015**
                                            Case/CAD #:  15-062385


    Use(s) of force          Effective/Not Effective
    TASER X2                 Not Effective
    TASER X2                 Effective

    Service being conducted: Other

**Involved Officer: Use of force**          IA No:  15C-129          **Received: Jul 21, 2015**
                                            Case/CAD #:  15-064829


    Use(s) of force          Effective/Not Effective
    TASER X2                 Not Effective
    TASER X2                 Not Effective
    Physical Compulsion      Effective

    Service being conducted: Other

**Involved Officer: Use of force**          IA No:  15C-137          **Received: Aug 03, 2015**
                                            Case/CAD #:  15-069140


    Use(s) of force          Effective/Not Effective
    TASER X2                 Effective

    Service being conducted: Other

**Involved Officer: Use of force**          IA No:  15C-164          **Received: Sep 21, 2015**
                                            Case/CAD #:  15-085074


    Use(s) of force          Effective/Not Effective
    TASER X2                 Not Effective
    TASER X2                 Effective

    Service being conducted: Suspicious Person

**Involved Officer: Citizen (B)**           IA No:  16B-024          **Received: Jun 20, 2016**


    Allegations:

Department Policy — 426.01 Policy for Pursuits — Sustained — Oct 05, 2016

Oct 05, 2016 — Documented Verbal Counseling   Days/hrs suspended: 0

**Involved Officer: Vehicle pursuit**          IA No: 16D-011          **Received: Jun 30, 2016**
                                               Case/CAD #:  16-054408

**Role: Other**

Allegations:

Pursuit Policy — 426.00 Pursuit Policy — Not In Compliance — Oct 05, 2016

**Involved Officer: Vehicle accident**         IA No:  17F-004          **Received: Jan 18, 2017**

Allegations:

Vehicle Accident — 202.02 Duty To Abide by All Laws and Orders — Not At Fault — Jan 11, 2017

**Involved Officer: Vehicle accident**         IA No:  17F-101          **Received: May 25, 2017**

Allegations:

Vehicle Accident — 202.02 Duty To Abide by All Laws and Orders — Not At Fault — May 22, 2017

**Involved Officer: Vehicle accident**         IA No: 18F-189          **Received: Jul 30, 2018**
                                               Case/CAD #:  18-065365

Allegations:

Vehicle Accident — 202.02 Duty To Abide by All Laws and Orders — At Fault — Aug 15, 2018

Aug 15, 2018 — Loss Of Good Driving Record   Days/hrs suspended: 0

**Involved Officer: Use of force**             IA No:  18C-178          **Received: Aug 11, 2018**
                                               Case/CAD #:  18-074437

**Role: Backup #2**

Use(s) of force          Effective/Not Effective
TASER X2                 Effective

Service being conducted: Accident/Hit and Run

**Involved Officer: Use of force**             IA No:  19C-001          **Received: Jan 02, 2019**
                                               Case/CAD #:  19-000504

**Role: Backup #1**

Use(s) of force          Effective/Not Effective
TASER X2                 Not Effective

Service being conducted: Intoxicated/Mentally Ill

**Involved Officer: Use of force**             IA No:  20C-075          **Received: Nov 30, 2020**
                                               Case/CAD #:  20-090435

**Role: Backup #1**

Use(s) of force          Effective/Not Effective
TASER X2                 Effective

Service being conducted: Assault/Battery

**Involved Officer: Vehicle pursuit**          IA No:  21D-003          **Received: Feb 22, 2021**

Allegations:

Pursuit Policy — 426.01 Policy for Pursuits — In Compliance — Mar 08, 2021

**Involved Officer: Use of force**             IA No:  21C-043          **Received: Mar 20, 2021**
                                               Case/CAD #:  21-021759

**Role: Primary**

Use(s) of force          Effective/Not Effective
TASER X2                 Effective

Service being conducted: Other

**Involved Officer: Use of force**             IA No:  21C-154          **Received: Aug 31, 2021**
                                               Case/CAD #:  21-069757

**Role: Backup #1**

Use(s) of force          Effective/Not Effective
TASER X2                 Not Effective

Service being conducted: Disorderly/Fight/Obstruc

Allegations:

Vehicle Accident - 202.02 Duty To Abide by All Laws and Orders - Not At Fault - Jan 29, 2025

**Involved Officer: Use of force**          IA No:   25C-042          **Received: Mar 13, 2025**
                                            Case/CAD #:   GP250015809

Use(s) of force          Effective/Not Effective
Less than lethal firearm Effective

Service being conducted:

**Involved Officer: Vehicle pursuit**          IA No:   25D-007          **Received: Jul 21, 2025**
                                               Case/CAD #:   GP250050281

Allegations:

Pursuit Policy - 426.00 Pursuit Policy - Open -

Report summary: totals by incident type:

| Incident type | Received |
|---|---|
| Administrative (A) | 0 |
| Administrative Review (AR) | 0 |
| Citizen (B) | 1 |
| Discretionary arrest | 0 |
| Drug test | 0 |
| Forced entry | 0 |
| Integrity test | 0 |
| K9 Utilization | 0 |
| Stop | 0 |
| Use of force | 18 |
| Vehicle accident | 7 |
| Vehicle pursuit | 5 |
| Vehicle: Property Damage | 0 |
| **Total** | **31** |

Printed: Jul 24, 2025 08:37   By: PO Master Terrell Cochran

Exhibit I

Google Maps

### 1684 Old Norcross Rd

Approximate Arrest Location

G  Google Street View

Mar 2021

Google

Image capture: Mar 2021    © 2025 Google



**Google** Maps          **1706 Old Norcross Rd**



Image capture: Jan 2022     © 2025 Google



## 1706 Old Norcross Rd

Google Maps

Intersection of Old Norcross Rd & Sugarloaf Parkway
Stop initiated here

G Google Street View

Jan 2022

Image capture: Jan 2022 © 2025 Google



### Lawrenceville, Georgia

 Maps

Exiting Cruse Plaza
1848 Old Norcross suit #900

 Google Street View

Jan 2022



Image capture: Jan 2022    © 2025 Google



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
ATLANTA DIVISION

Michael Rodriquez Marshall,
Plaintiff,

v.

Officer Alexander Sydney Jaeger (Badge #B2517), in his individual and official capacities;
Officer Nicholas Raven Abram (Badge #B2416), in his individual and official capacities;
Sergeant Tyler C. Stevers (Badge #B1570), in his individual and official capacities;
Gwinnett County Police Department;
Gwinnett County, Georgia,
Defendants.

Civil Action No.: _____

**EXHIBIT J – DECLARATION OF EVENTS & TIMELINE**
(Pursuant to 28 U.S.C. § 1746)

---

**Declaration of Michael R. Marshall**

I, Michael Rodriquez Marshall, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and recollection:

---

**Chronological Account of Events**

**November 6, 2023 – Approximately 11:50 PM**
I was leaving the MonteMar located at the intersection of Old Norcross Road and Sugarloaf Parkway, traveling toward the RaceTrac gas station in the opposite direction of oncoming traffic. Officer Alexander Jaeger was driving toward me, not behind me, when he abruptly made a U-turn after passing my vehicle.

**Traffic Light Stop – Old Norcross & Sugarloaf Parkway**
I was stopped at the traffic light when Officer Jaeger's patrol car pulled behind me. As the light turned green and I proceeded forward, his emergency lights activated, initiating the stop.

**Initial Contact**
Officer Jaeger approached my vehicle and stated he had run my license plate and determined the registered owner did not have a valid driver's license. I explained that I was not engaged in any commercial activity, had committed no crime, and requested that he provide probable cause or a

warrant before demanding identification. I also told him I was not contracted with the State of Georgia to obtain a driver's license and had supporting documents to prove this.

## Margarita Can Allegation

Officer Jaeger claimed he saw a "Margarita can" in my back seat and stated he was going to ask me again to step out of my car. I handed him a document titled "Inquiry of Detainment," which he read, returned to me, and then repeated his order to exit the vehicle.

## Miranda Request Ignored

I stated clearly: "If you read me my Miranda rights, I will speak with you, but until then I am not answering any questions." Officer Jaeger refused to read my rights. I also told him that if he had no warrant, he needed to leave me alone.

## Coercion and Arrest

At this point, Officer Jaeger threatened to break my windows if I did not exit the car. Under duress, I exited the vehicle. After placing me under arrest, he retrieved my driver's license and cellphone from inside my car without a warrant or consent. He then taunted me by dancing and making gestures to show he had access to my phone, implying he could delete my evidence. I believe he deleted my own video recording of the stop from my phone.

## Transport and Safety Concerns

Instead of transporting me directly to the Gwinnett County Jail, Officer Jaeger drove at high speed in the opposite direction for approximately 15–20 minutes before heading toward the jail. During the ride, I repeatedly asked where he was taking me and pleaded for my safety.

## Detention and Release

I was booked and held overnight. I bonded out later that day. Nearly two years have passed, and I have not been arraigned or given a trial date.

---

## Notable Officer Misconduct Patterns

- **Officer Jaeger (B2517)**: Documented use-of-force incidents approximately every six months; repeated allegations of escalation rather than de-escalation.

- **Officer Abram (B2416)**: History of questionable arrests and supervisory failures during encounters.

- **Sergeant Stevers (B1570)**: Previous supervisory failures and lack of corrective action in similar incidents.

This pattern of unchecked misconduct supports my **Monell claim** that Gwinnett County has failed to supervise, train, and discipline officers, fostering an environment where constitutional violations occur repeatedly.

**Executed on:** _____, 2025

**Location:** Lawrenceville, Georgia

**Signature:** _Michael R. Marshall_

Michael R. Marshall, Pro Se Plaintiff

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

## CERTIFICATE OF SERVICE

I hereby certify that on this _29_ day of _August_ , 2025, I served a true and correct copy of the following documents:

- Complaint and Jury Demand
- Exhibits A–J (including Declaration of Events & Timeline as Exhibit J)

by delivering the same via U.S. Marshal Service to the following Defendant:

**Officer Alexander Sydney. Jaeger**, Badge #B2517, in his individual and official capacities;
**Officer Nicholas Raven. Abram**, Badge #B2416, in his individual and official capacities;
**Sergeant Tyler C. Stevers**, Badge #B1570, in his individual and official capacities;
**Gwinnett County Police Department;**
**Gwinnett County Government,**

This service is being executed pursuant to Rule 4 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date: _08/29/2025_

/s/ _Michael J. Mitchell_